IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DOE BOY, a/k/a CLINTON FRENCH )
a/k/a CHRISTOPHER WILLIAMS )
CLEMONS, a/k/a CHRIS CLEMONS, )
a/k/a CHRIS COLLINS, )
 )
       Petitioner, )
 )
v. )       Civ. A. No. 03-319-KAJ
 )       Cr. A. No. 99-82-KAJ
 )
UNITED STATES OF AMERICA, )
 )
       Respondent. )


**MEMORANDUM OPINION**

_____


Christopher Clemons. *Pro se* Petitioner.

Robert J. Prettyman, Esquire, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

_____


March 28, 2006
Wilmington, Delaware

JORDAN, District Judge

## I.    INTRODUCTION

Petitioner Christopher Clemons ("Clemons") is a federal inmate incarcerated at the USP Canaan in Waymart, Pennsylvania. Clemons filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, a supplemental memorandum, and a traverse. (Docket Item ["D.I."] 55; D.I. 61; D.I. 65. ) The Government has filed its answer. (D.I. 69.) For the reasons discussed, I will deny Clemons's § 2255 motion without holding an evidentiary hearing.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    First Criminal Proceeding: *USA v. Doe Boy*, Cr. A. No. 98-109-RRM

On October 13, 1998, Clemons was charged by indictment with two counts of knowingly distributing a mixture containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (the "October 1998 Indictment"). (D.I. 55 at Exh. 1, pp.1-2.) The indictment stemmed from activities occurring on September 4, 1998 and September 17, 1998.

A bench warrant was issued, and law enforcement officials arrested Clemons on October 15, 1998. At the time of his arrest, Clemons was carrying a black nylon satchel. The law enforcement officials searched the satchel and found approximately

1

250 grams of a drug that turned out to be "crack", i.e., cocaine base.[1]  (D.I. 29 at A-15.)

They also discovered a loaded semi-automatic firearm.  (*Id.*)

On November 20, 1998, Clemons filed through counsel a waiver of the October

1998 Indictment.  The Government filed a Felony Information based on the events of

October 15, 1998, charging Clemons with one count of knowingly possessing with

intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and

one count of knowingly carrying a semi-automatic pistol during, and in relation to, the

commission of the offense of possession with intent to distribute crack cocaine in

violation of 18 U.S.C. § 924(c)(1).  (D.I. 29 at A-62 to A-63.)  On November 20, 1998,

---

[1]As discussed later in the opinion, Clemons makes a distinction between "crack" cocaine base and "powder" cocaine base.  As aptly described by the Third Circuit Court of Appeals:

> Cocaine is a naturally occurring substance that is derived from the leaves of the erythroxylon plant.  There are five basic forms of the drug: coca leaves, coca paste, powder cocaine, freebase cocaine, and crack cocaine.  There are three base forms of cocaine: coca paste, freebase cocaine, and crack cocaine... . Both freebase cocaine and crack cocaine are forms of cocaine base produced from powder cocaine... .  'Crack' is not a chemical term; it describes a substance that results from a general method for making cocaine base out of powder cocaine... .  The Sentencing Guidelines note, '[c]rack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy rocklike form.

*United States v. Brigman*, 350 F.3d 310, 312-13 (3d Cir. 2003) (internal citations omitted).

A 1993 amendment to United States Sentencing Guidelines defines "cocaine base" as "crack."  *See* United States Sentencing Manual ("USSG") § 2D1.1(c) Note D. For purposes of clarity, I will use the term "crack cocaine" to refer to what Clemons calls "crack cocaine base."  I will also use the term "generic cocaine base" to refer to what Clemons intermittently calls "powder cocaine base" and "cocaine base."

Clemons pled guilty to the two charges listed in the Felony Information.[2] (D.I. 29 at A-9 to A-12; *see* D.I. 15 in *USA v. Doe Boy*, Cr. A. No. 98-109-RRM.)

Sentencing was scheduled for February 18, 1999. (D.I. 29 at A-21 through A-56.) However, in January 1999, Clemons's attorney passed away and a new attorney was appointed to represent Clemons. Sentencing was re-scheduled several times until January 2000, when Clemons filed a motion to withdraw his guilty plea and his waiver of the indictment. (D.I. 35 in *U.S.A. v. "Doe Boy"*, Cr. A. No. 98-109-RRM.) The Court granted the motion. *Id.* In December 2000, the Government filed a motion to dismiss the October 1998 Indictment, and a motion to dismiss the Felony Information. (D.I. 37; D.I. 38 in *U.S.A. v. "Doe Boy"*, Cr. A. No. 98-109-RRM.) The Court granted both motions, and the case was closed on December 19, 2000.

### B.    Second Indictment and Trial

On November 23, 1999, Clemons was charged by indictment with one count of knowingly possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and one count of knowingly carrying a semi-automatic pistol during, and in relation to, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). (The "November 1999 Indictment") (D.I. 55 at Exh. 3.) After a two-day jury trial in March 2000, a jury convicted Clemons on both counts of the November 1999 Indictment. The Honorable Roderick R. McKelvie sentenced Clemons to a total of 300 months (240 months for the conviction under 21 U.S.C. § 841, and 60 months for the conviction under 18 U.S.C. § 924), followed by six years of supervised release.

---

[2]The Honorable Roderick R. McKelvie presided over both of Clemons's criminal proceedings. This matter was reassigned to me on April 7, 2003.

3

On December 12, 2000, trial counsel filed an appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967), citing a lack of non-frivolous appealable issues.[3] The appellate brief raised the following claims: (1) the Court erred in denying a motion to dismiss the November 1999 Indictment pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) Clemons should have been granted a new trial based on newly discovered evidence that he was searched without a warrant; (3) the Court erred in denying him a two level reduction in offense level for his acceptance of responsibility under United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(a); (4) the Court erred in denying Clemons's motion to dismiss every sentencing enhancement under *Apprendi*; (5) Clemons was entitled to notice of a sentencing enhancement under 21 U.S.C. § 851(a)(1) for his prior felony convictions; (6) the Court abused its discretion by declining to depart downward based on his pretrial confinement at Gander Hill prison; and (7) the Court erred in calculating the base offense. *United States v. Doe Boy*, 29 Fed. Appx. 91 (3d Cir. 2002). Counsel then filed a motion to withdraw from representing Clemons. The Third Circuit Court of Appeals notified Clemons that he could file a *pro se* brief. After Clemons failed to file a *pro se* appellate brief, the court of

---

[3]In *Anders*, the Supreme Court held that the "constitutional requirement of substantial equality and fair process" requires appellate counsel to act as a vigorous advocate for the defendant. *Anders*, 386 U.S. at 744. Counsel must conscientiously examine the defendant's case, and, if he then concludes that the case is wholly frivolous, he should advise the court and request permission to withdraw. However, counsel's request to withdraw must be accompanied by a brief explaining why the issues are frivolous and referring to anything in the record that might arguably support the appeal. A copy of the brief must be supplied to the appellant, and the appellant should be given an opportunity to raise any issues he chooses. *Id*.

4

appeals granted counsel's motion to withdraw and affirmed Clemons's conviction and sentence. Id.

In March 2003, Clemons filed a pro se § 2255 motion challenging his 2000 conviction and sentence (D.I. 55), and he filed a supplemental memorandum (D.I. 61). The Government filed an answer (D.I. 63), Clemons filed a traverse (D.I. 65), and the Government filed an amended answer (D.I. 68).

## III.   EVIDENTIARY HEARING

Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, I must first determine whether an evidentiary hearing is required in this case. After reviewing Clemons's numerous filings, the Government's amended answer, and the record, I find that an evidentiary hearing is not required because Clemons has failed to raise a genuine issue of material fact. See United States v. Essig, 10 F.3d 968, 976 (3d Cir. 1993); Gov't of the Virgin Islands v. Forte, 865 F.59, 62 (3d Cir. 1989). Additionally, the files and records of the case conclusively establish that Clemons is not entitled to relief. United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005); Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001). Therefore, I will proceed to the merits of Clemons's § 2255 motion.

## IV.   DISCUSSION

Clemons's § 2255 motion and supplemental memorandum challenge his conviction and sentence on the ground that counsel provided ineffective assistance during the pre-trial, trial, and appellate stages of his criminal proceeding. Clemons also

5

filed a document titled "Request for Judicial Notice of Adjudicative Facts,"[4] which I construe as an attempt to add a *Blakely* claim to his § 2255 motion. (D.I. 73.)

The Government filed an answer (D.I. 63), and then an amended answer (D.I. 68), addressing Clemons's ineffective assistance of counsel claims. The Government did not file a response to Clemons's *Blakely* claim.

### A.    *Blakely* Claim[5]

Clemons asserts that his sentence must be vacated because the Court "used non-offense relevant conduct to sentence him to a harsher sentence than what was allowable based on the facts reflected in the jury verdict." (D.I. 73 at 4.) Although Clemons cites *Blakely v. Washington,* 542 U.S. 296 (2004), as the relevant authority, the issue he raises as a federal prisoner is actually governed by *United States v. Booker,* 543 U.S. 220 (2005). In *Booker,* the United States Supreme Court "reaffirmed the reasoning in *Apprendi* and *Blakely* and applied it to invalidate the Federal Sentencing Guidelines, holding that '[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" *United States v. Leahy*, - F.3d. -, 2006

---

[4]Clemons's "Request for Judicial Notice of Adjudicative Facts" also re-asserts the claim contained in his § 2255 motion alleging that counsel provided ineffective assistance by failing to raise an *Apprendi* claim on direct appeal. I discuss that claim in the body of this opinion. *See supra* pp. 30-31.

[5]In the interest of judicial economy, and because I find the *Blakely* claim to be unavailing, I will review it rather than engage in an extensive analysis under Federal Rule of Civil Procedure 15 as to the propriety of Clemons's attempted amendment of his § 2255 motion.

WL 335806, at \*6 (3d Cir. Feb. 15, 2006) (citing *Booker,* 125 S.Ct. at 756). Therefore, the "mandatory enhancement of a sentence under the Guidelines, based on facts found by a court alone, violates the Sixth Amendment." *United States v. Davis*, 407 F.3d 162, 163 (3d Cir. 2005).

The Supreme Court has clearly articulated that its holding in *Booker* applies "to all cases on direct review." *Booker*, 125 S.Ct. at 769. Recently, the Third Circuit held that *Booker* does not apply retroactively to cases on collateral review. *Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005). Clemons's conviction became final in 2001, well before the United States Supreme Court decided *Blakely* in 2004 and *Booker* in 2005. Therefore, Clemons's *Booker* claim fails to provide a basis for relief.

**B.    Ineffective Assistance of Counsel Claims**

Clemons asserts that counsel did not adequately prepare or investigate his case, as evidenced by counsel's failure to:  (1) file a motion to suppress the evidence obtained from the illegal search of his satchel; (2) file a motion to dismiss the November 1999 Indictment; (3) file a motion for the lab reports; (4) file a motion to suppress his post-arrest statements; and (5) discover that the Government used an unauthorized electronic surveillance device to track his movements. (D.I. 55; D.I. 61; D.I. 65.) Clemons also asserts that counsel provided ineffective assistance on direct appeal, as evidenced by counsel's failure to: (6) challenge the Government's use of expert testimony as violating Federal Rule of Evidence 704(b); (7) raise an *Apprendi* claim challenging the Court's determination that the preponderance of the evidence established the drug as crack cocaine, as opposed to generic cocaine base; and (8)

7

challenge the Court's reliance on non-offense relevant conduct listed in the pre-sentence report to increase the quantity of the drugs and enhance his sentence. *Id.* Finally, Clemons asserts a general allegation that counsel inadequately investigated his case, inadequately prepared for trial, and generally failed to file pre-trial and discovery motions and to subpoena witnesses. (D.I. 55 at 10.)

### 1.  Proper standard for Clemons's ineffective assistance of counsel claims

Generally, a court reviews ineffective assistance of counsel claims under the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

Clemons, however, appears to argue that counsel's overall failure to investigate and prepare -- as demonstrated by counsel's failure to file any pre-trial motions for discovery and suppression motions, or his failure to subpoena witnesses -- requires the application of the limited exception to *Strickland*'s prejudice prong established in *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). (D.I. 65 at 5-6.) In *Cronic*, the United States Supreme Court held that there are three situations in which prejudice will be presumed: where the defendant is completely denied counsel at a critical stage, when

8

"counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or when the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *Cronic*, 466 U.S. at 659 & n.25. Clemons asserts that the pre-trial period constitutes a "critical period," and therefore, prejudice should be presumed because of counsel's overall pre-trial failure to investigate. He also contends that counsel failed to subject the Government's case to meaningful adversarial testing because of the same overall failure to investigate the case during the pre-trial stage.

It is well-settled that the *Cronic* presumption of prejudice only applies when counsel has completely failed to test the prosecution's case throughout the entire trial. *See Bell v. Cone*, 535 U.S. 685, 697 (2002). In the instant case, trial counsel started representing Clemons during his first criminal proceeding, soon after Clemons had entered a plea agreement. Counsel continued to represent Clemons for the withdrawal of that guilty plea, as well as during Clemons's entire second criminal proceeding leading to the conviction and sentence he is currently challenging. As I explain in more detail in my analysis of Clemons's specific allegations of ineffective assistance, counsel did not fail to investigate the facts of Clemons case. Rather, counsel already had many discovery items in his possession, therefore obviating any need to file motions to obtain those items. Additionally, Clemons concedes that counsel's performance during trial was impressive. (D.I. 65 at 8.) Based on this record, I conclude that counsel's performance during the pre-trial stage was not so lacking as to require the application of *Cronic* over *Strickland*.

9

Accordingly, I will apply both prongs of the *Strickland* test to determine whether any of Clemons's claims warrant relief. When applying the *Strickland* test, I must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 688-89. The *Strickland* test also applies to claims involving ineffective assistance during an appeal. *Kimmelman v. Morrison*, 477 U.S. 365, 374-75, 380-82 (1986); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

> **2.    Counsel's failure to investigate resulted in counsel's failure to discover that the Government did not possess a search warrant for his satchel**

Law enforcement officials arrested Clemons on October 15, 1998 pursuant to a valid federal arrest warrant. Within one minute of Clemons's arrest, a law enforcement officer named Sullivan seized and searched the satchel that Clemons was carrying. Sullivan searched the satchel within two feet from where he originally seized it from Clemons. (D.I. 41.)

In his § 2255 motion, Clemons contends that trial counsel's inadequate investigation resulted in counsel's failure to discover that the police illegally searched his satchel without a search warrant. Clemons also contends that he was prejudiced by counsel's failure to investigate because counsel did not file a motion to suppress the drugs and gun seized from the satchel. (D.I. 55 at 11.)

When determining whether trial counsel provided ineffective assistance, I must apply the principle that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices

10

made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations in investigation." *Strickland,* 466 U.S. at 690-91. Here, Clemons raised the underlying illegal search argument in a *pro se* motion for new trial that he filed in the Court after his conviction but prior to his sentencing. (D.I. 41.)  The Honorable Roderick R. McKelvie considered the motion during Clemons's December 2000 sentencing hearing, and stated that he was inclined to deny the motion for new trial because he believed the search was an appropriate administrative search.  Judge McKelvie also stated that the issue was raised too late; it should have been raised before trial. (D.I. 49 at 8-9.)  Counsel responded as follows:

> Your Honor, I reviewed an extensive affidavit, just to make a record on this, and it was my opinion that there was not a meritorious basis for a suppression motion [premised on the fact that the Government only had an arrest warrant, and not a search warrant].  So when I did file it [Clemons's motion for a new trial based on newly discovered evidence] it wasn't that I had forgotten. It was I did not believe it was a meritorious issue.  I thought that the matter was controlled by *Belton*[6] and other cases.

(D.I. 60 AA-180.)  This excerpt from the sentencing hearing clearly demonstrates that counsel's "failure" to file a suppression motion was not due to inadequate investigation, but rather, it was the result of an analysis of the situation under the governing legal principles.  Therefore, Clemons has failed to establish that counsel performed deficiently.

---

[6]In *New York v. Belton*, 453 U.S. 454, 460-63 and n.5 (1981), the United States Supreme Court held that a warrantless search of the passenger compartment of a vehicle, and any containers therein, is valid if it is performed  incident to a valid custodial arrest of the automobile's occupant.  The term "containers" includes luggage and bags. *Id.* at n. 4.  The Supreme Court has recently held that *Belton* applies to situations where the police officer does not make contact with the occupant until after the arrestee has left the vehicle.  *Thornton v. United States*, 541 U.S. 615, 617 (2004).

Additionally, Clemons has not established prejudice under the *Strickland*
analysis. As noted by the Third Circuit in its decision on Clemons's appeal, the
underlying Fourth Amendment claim is meritless because the search of the satchel was
performed incident to a lawful arrest. *Doe Boy*, 29 Fed. Appx. at *93 (citing *Illinois v.
Lafayette*, 462 U.S. 640 (1983)). It is well-settled that a petitioner is not prejudiced by
an attorney's failure to raise a meritless claim. *United States v. Barnes,* 324 F.3d 135,
139 (3d Cir. 2003); *United States v. Kiser*, 1996 WL 490263, at *4 (D. Del. 1996).
Accordingly, I will deny this claim.

### 3.    Counsel's failure to have the indictment dismissed

Clemons contends that counsel should have moved to dismiss the November
1999 Indictment for three reasons: it was time-barred under 18 U.S.C. § 3288, it was
motivated by prosecutorial vindictiveness, and it was issued in violation of the Speedy
Trial Act. (D.I. 55 at 19-25 ; D.I. 61 at 6-11; D.I. 65 at 13.) However, in his January
2000 Motion to Withdraw Waiver of [the October 1998] Indictment and Guilty Plea [in
Crim. A. No. 98-109-RRM], Clemons knowingly, voluntarily, and intelligently admitted
and agreed that the grand jury could indict him on the two charges that became the
November 1999 Indictment, and that he was satisfied with counsel's representation of
him. (D.I. 70, Exh. 1, at pp. 2-4.) Accordingly, I conclude that counsel performed in an
objectively reasonable manner by not filing a motion to dismiss the November 1999
Indictment.

12

Additionally, as explained below, the three arguments are meritless, and

Clemons cannot demonstrate that he was prejudiced by counsel's failure to raise

meritless arguments.

### a.    18 U.S.C. § 3288

Clemons contends that the November 1999 Indictment was time-barred under

18 U.S.C. § 3288.  Section 3288 provides:

> Whenever an indictment or information charging a felony is dismissed for
> any reason after the period prescribed by the applicable statute of
> limitations has expired, a new indictment may be returned in the
> appropriate jurisdiction within six calendar months of the date of the
> dismissal of the indictment or information, or, in the event of an appeal,
> within sixty days of the date the dismissal of the indictment or information
> becomes final, or, if no regular grand jury is in session in the appropriate
> jurisdiction when the indictment or information is dismissed, within six
> calendar months of the date when the next regular grand jury is
> convened, which new indictment shall not be barred by any statute of
> limitations.  This section does not permit the filing of a new indictment or
> information where the reason for the dismissal was the failure to file the
> indictment or information within the period prescribed by the applicable
> statute of limitations, or some other reason that would bar a new
> prosecution.

Clemons's argument fails because the November 1999 Indictment was filed well-

before the "period prescribed by the applicable statute of limitations."  The statute of

limitations on issuing a new or superseding indictment does not expire until the statute

of limitations for the charged crime has expired.  *United States v. Friedman*, 649 F.2d

199, 203 n.4 (3d Cir. 1981).  In Clemons's case, the October 1998 Indictment charged

him with two counts of intent to distribute a controlled substance in violation of 21

U.S.C. § 841(a)(1), (b)(1)(A), and the November 1999 Indictment charged him with one

count of intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1),

(b)(1)(A) and one count of carrying a firearm during and in relation to a drug trafficking

13

crime in violation of 18 U.S.C. § 924(c). The general statute of limitations for these non-capital offenses is five years. *See* 18 U.S.C. § 3282. The events at issue in the indictments occurred in September and October of 1998. (*See supra* p. 1.) The October 1998 Indictment was issued on October 13, 1998 and dismissed in January 2000. The November 1999 Indictment was issued on November 23, 1999, and therefore was issued well before the expiration of the five year limitation period. Accordingly, counsel did not provide ineffective assistance by failing to raise this baseless argument

### b.    Prosecutorial vindictiveness

Clemons contends that the November 1999 Indictment was motivated by prosecutorial vindictiveness because of his decision to withdraw his guilty plea and proceed to trial, as demonstrated by the fact that it exposed him to harsher penalties than the October 1998 Indictment. Specifically, count two of the October 1998 Indictment charged that, on or about September 17, 1998, Clemons did knowingly distribute a mixture which contained cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), whereas count two of the November 1999 Indictment charged that, on or about October 15, 1998, Clemons did knowingly carry a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Thus, Clemons asserts that counsel provided ineffective assistance by failing to challenge the November 1999 Indictment on prosecutorial vindictiveness grounds.

It is well-settled that a prosecutor is prohibited from retaliating against a defendant for exercising a protected legal right. *United States v. Goodwin*, 457 U.S.

14

368, 372 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Prosecutorial vindictiveness is established in two ways: first, by producing evidence of actual vindictiveness sufficient to show a due process violation, or second, by showing that there is a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness. *See United States v. Goodwin*, 457 U.S. 368, 376, 380 n.12 (1982). If the situation warrants the presumption of vindictiveness, then the Government has the burden of rebutting the presumption with objective evidence to justify the prosecutor's decision. *Id.* Situations warranting the presumption of vindictiveness include those where the defendant has successfully appealed his conviction, and is subject to greater punishment upon retrial. *See Blackledge v. Perry*, 417 U.S. 21, 25-26 (1974). However, there is no prosecutorial vindictiveness when the prosecutor's decision to prosecute is based on "the usual determinative factors." *United States v. Schoolcraft*, 879 F.2d 64, 67 (3d Cir. 1989).

The circumstances surrounding the Government's filing of the November 1999 Indictment do not raise a presumption of vindictiveness, nor do they demonstrate actual vindictiveness. As previously discussed, Clemons knowingly and voluntarily waived prosecution by the October 1998 Indictment, and consented to prosecution by Felony Information. Consequently, the proper comparison for the instant prosecutorial vindictiveness claim would appear to be between the November 1999 Indictment and the Felony Information in the first proceeding (Cr. A. No. 98-109-RRM). Both the Felony Information in Crim. A. No. 98-102-RRM and the November 1999 Indictment charged Clemons with one count of knowingly possessing with intent to distribute crack cocaine, a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and

15

one count of knowingly carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Therefore, the November Indictment did not expose Clemons to harsher penalties.

Second, even if the proper comparison for the instant prosecutorial vindictiveness claim is between the October 1998 and November 1999 Indictments, Clemons actually withdrew his guilty plea after the November 1999 Indictment was issued, demonstrating that the enlarged exposure to penalties was not due to his withdrawal of the guilty plea.[7]

### c.    Speedy indictment requirement

Clemons was arrested on October 15, 1998 for the offenses charged in the November 1999 Indictment. Pursuant to 18 U.S.C. § 3161(b), "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days of the date on which such individual was arrested ... in connection with such charges." Additionally, 18 U.S.C. § 3162(a)(1) provides:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by Section 3161(b) as extended by Section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

Therefore, Clemons argues that counsel was ineffective for failing to argue that the November 1999 Indictment violated the speedy indictment requirement of § 3162(a)(1)

---

[7]The November 1999 Indictment was issued on November 23, 1999 (D.I. 1), the October 1998 Indictment was dismissed on December 12, 1999, and Clemons's guilty plea was withdrawn on January 4, 2000. (D.I. 37; D.I. 35 in Crim. A. No. 98-109-RRM.)

because it was issued more than one year after he was arrested for committing the
underlying offenses.  (D.I. 65 at 13.)

Counsel did not provide ineffective assistance for failing to raise this argument
because there was no violation of the speedy indictment rule.  First, Clemons was
originally charged by an indictment, not a complaint.  Moreover, there are no
overlapping charges between the two Indictments because the charges contained in
each Indictment stemmed from activities occurring on different days.  *See United States
v. Oliver*, 238 F.3d 471, 473 (3d Cir. 2001) (holding that the "Speedy Trial Act requires
dismissal of only those charges that were made in the original complaint that triggered
the thirty day time period.").  The October 1998 Indictment charged Clemons with one
count of distributing a mixture containing crack cocaine on September 4, 1998 and one
count of distributing a mixture containing crack cocaine on September 17, 1998.  The
November 1999 Indictment charged Clemons with one count of possession with intent
to distribute crack cocaine, on October 15, 1998, and one count of carrying a firearm
during and in relation to that crime on October 15, 1998.

Accordingly, I will deny the instant claim because counsel did not provide
ineffective assistance by failing to raise the meritless speedy indictment argument.

> **4.     Counsel's failure to obtain the lab report caused him to
> ineffectively cross-examine Dr. DasGupta on the identity
> of the drug**

Clemons contends that trial counsel's failure to file motions to obtain the lab
report adversely affected counsel's cross-examination of the Government's expert

17

witness, Dr. DasGupta.[8]  As an initial matter, the record indicates that counsel actually

did have a copy of the lab report.[9]  Therefore, counsel did not perform deficiently

because a motion to obtain the lab report was unnecessary.

Additionally, Clemons cannot establish the requisite prejudice under *Strickland*.

The record demonstrates that counsel zealously and thoroughly cross-examined Dr.

DasGupta about the four tests performed on the seized drugs:  the "color" test, the

"solubility" test, the "thin layer chromatography" test, and the "gas chromatography

mass spectroscopy" test.  Through questioning, counsel established that the four tests

were commonly accepted as the appropriate tests in the forensic toxicology scientific

community for determining whether a substance is crack cocaine or powdered cocaine

(cocaine hydrochloride).  In response to counsel's cross-examination, Dr. DasGupta

testified that the tests he performed on the seized substance conclusively determined

that the substance was crack cocaine.  Dr. DasGupta also testified that the appearance

of the drug he tested was similar to the thousand of other crack cocaine exhibits he has

analyzed over the years.  (D.I. 69 at AA-111 to AA-113.)

Nevertheless, Clemons contends that he was prejudiced by counsel's failure to

argue that "the government chemist never tested the substance to see if it was

smokable, or able to be vaporized and drawn into the lungs, for the substance seized by

---

[8]Dr. DasGupta is a forensic chemist with the Delaware Medical Examiner's
Office.  (D.I. 25 at 140.)

[9]The record contains a letter from the United States Attorney's Office, dated
February 5, 1999, addressed to defense counsel, providing discovery items for
Clemons's first criminal proceeding.  (D.I. 34 at A-34.)  One of the numerous discovery
items provided to trial counsel was the lab report.  (D.I. 34 at A-37 to A-39.)

the [G]overnment was not rock-like but crumbly and soft."[10]  (D.I. 65 at 9-10.)  Clemons

does not provide, and I have not found, any Third Circuit authority espousing "smoking"

and "vaporizing" tests as routine tests for determining whether a substance is crack

cocaine.  In fact, counsel did ask Dr. DasGupta if he tested the drug for sodium

bicarbonate, which is another test commonly used to determine if a drug is crack

cocaine.  Dr. DasGupta responded that he did not test for sodium bicarbonate.[11]  *See*

U.S.S.G. § 2D1.1; D.I. 69 at AA-110-111.

    Dr. DasGupta's testimony is more compelling than testimony the Third Circuit has

accepted in identifying a drug as crack cocaine.  *See United States v. Dent*, 149 F.3d

180, 188-90 (3d Cir. 1998) (concluding that chemist's testimony regarding the identity of

the drug involved, along with the arresting officer's identification of the drug as crack,

was sufficient to support a finding of crack cocaine, even though the chemist only

performed two chemical tests on the drug: a Scott's reagent test and a gas

chromatograph ion test); *United States v. Roman*, 121 F.3d 136, 141 (3d Cir. 1997)

(finding police officer's testimony identifying the drug as crack due to the manner in

which it was packaged as sufficient to establish that the drug was crack cocaine.).

---

[10]Testimony at trial established that the only way to experience an effect from
crack cocaine is to smoke it.  (D.I. 25 at 126.)

[11]Although crack often contains sodium bicarbonate, the Government is not
required to demonstrate that a drug contains sodium bicarbonate to show that the drug
is crack cocaine.  *United States v. Walters*, 313 F.3d 151, 155 (3d Cir. 2002).

19

Given these circumstances, I conclude that Clemons has failed to established that he was prejudiced by counsel's cross-examination of Dr. DasGupta.[12]

Accordingly, I will deny the instant claim because Clemons has failed to satisfy either prong of the *Strickland* test.

### 5.    Counsel failed to file a motion to suppress Clemons's statements made prior to trial

During Clemons's sentencing hearing, the Court accepted the recommendation contained in the pre-sentence report that Clemons's base offense level was 36, based in part on relevant conduct[13] increasing the overall quantity of cocaine by 15 kilograms and the quantity of crack cocaine to 500 grams. (D.I. 49 at 36-37; D.I. 55 at 15; D.I. 65 at 12.) Clemons contends that the relevant conduct was established by incriminating statements he made to the police regarding an amount of cocaine he brought from New York, and that the statements were obtained in violation of his *Miranda* rights on the day

_____

[12]Clemons also argues that counsel's impressive cross-examination cannot correct the failure to obtain the lab report under *United States v. Baynes*, 687 F.2d 659 (3d Cir. 1982). In *Baynes*, the Third Circuit held that a petitioner can demonstrate prejudice by showing that there was a possibility that counsel's assistance was not harmless. *Id*. at 670-71. However, the discussion of prejudice in *Baynes* is no longer good law after *Strickland. Morrison v. Kimmelman*, 752 F.2d 918, 922-23 (3d Cir. 1985), *aff'd*, 477 U.S. 365 (1986); *see Lewis v. Mazurkiewicz*, 915 F.2d 106, 114 (3d Cir. 1990) (stating that "*Baynes* does not mean that defense counsel must fully investigate every potential item of evidence even if counsel had reasonable tactical grounds for not doing so."). Therefore, Clemons's reliance on *Baynes* is misplaced.

[13]The pre-sentence report listed: (1) two prior deliveries of crack cocaine to a confidential informant; (2) over $250,000 of crack cocaine and cocaine seized from Clemons's apartment on the day of his arrest pursuant to a search warrant; (3) two guns and a laser device seized from Clemons's apartment; (4) a conviction in 1992 for robbery in the first degree; and (5) two sets of charges, one in 1995 and one in 1996, for possession with intent to distribute drugs within a thousand feet of a school and attempting to elude a police officer, on which sentencing was pending. (D.I. 49 at 38.)

of his arrest.[14]  According to Clemons, without the enhancement for the increase in

quantity, his base offense level would have been 20, which, when computed with his

criminal history category of VI, would have led to a sentencing range of 70 to 87 months,

not 324 to 405 months.[15]  (D.I. 61 at 16.)  Therefore, although none of the post-arrest

statements were used at trial, Clemons contends that counsel provided ineffective

assistance by failing to file a motion to suppress the incriminating statements because

the statements were used to enhance his sentencing range.

Prior to a custodial interrogation, an accused must be informed of his Fifth

Amendment right to remain silent, to have an attorney present during questioning, and

that anything he says will be used against him.  *Miranda v. Arizona*, 384 U.S. 436, 444

(1966).  However, an accused in custody may knowingly and voluntarily waive his

*Miranda* rights, even after initially asserting them, thereby permitting the statements

made after such a waiver to be admitted as evidence during the accused's trial.  *Smith v.*

*Illinois*, 469 U.S. 91, 95 (1984); *Oregon v. Bradshaw*, 462 U.S. 1039 (1983); *United*

*States v. Velasquez*, 885 F.2d 1076, 1085 (3d Cir. 1989); *Moran v. Burbine*, 475 U.S.

412, 421 (1986).  The record reveals that Clemons signed a stipulated statement of

facts in his first criminal proceeding, 98cr109-RRM, admitting that he voluntarily signed a

---

[14]Specifically, Clemons asserts he invoked his *Miranda* rights while he was in police custody, but that law enforcement officials continued to ask him questions until he finally responded with incriminating statements regarding prior drug purchases.

[15]At sentencing, the Honorable Roderick R. McKelvie accepted the recommendation contained in the pre-sentence report for a criminal history category of VI due to Clemons's career offender status resulting from prior felony convictions.  (D.I. 33 at 9; D.I. 49 at 35.)  Clemons does not dispute that determination.  (D.I. 61 at 16; D.I. 69 at 14-15.)

written waiver of his *Miranda* rights after his initial invocation of those rights.  (D.I. 29 A-59 to A-61.)  Trial counsel represented Clemons during his original proceeding, and therefore, he was aware of the waiver.  Accordingly, trial counsel did not act unreasonably in refraining from filing a baseless suppression motion.

Furthermore, Clemons cannot demonstrate the requisite prejudice under *Strickland*.  In determining appropriate guideline ranges, a sentencing court can consider evidence that would be inadmissible at trial, provided that there are indicia sufficient to establish the reliability of the evidence.  *Roberts v. United States*, 445 U.S. 552, 556 (1980)*; United States v. Torres*, 926 F.2d 321, 325 (3d Cir. 1991) (evidence suppressed at trial for being obtained in violation of the defendant's Fourth Amendment rights could be considered at sentencing); U.S.S.G. § 6A1.3(a); *United States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993).  A defendant must be given an opportunity to object to the findings in a pre-sentence report, but the sentencing court may accept any undisputed portions of the pre-sentence report as findings of fact.  *See* Fed. R. Crim. P. 32(i)(3)(A). During  Clemons's sentencing, counsel preserved an objection to the increase in drug quantity based on the relevant conduct contained in the pre-sentence report.  (D.I. 49 at 37.)  Therefore, given counsel's compliance with the proper procedure for challenging findings contained in a pre-sentence report, I conclude that counsel's decision to not file a  pre-trial suppression motion with respect to Clemons's incriminatory statements did not prejudice Clemons.

Clemons also cannot demonstrate prejudice because, to the extent any of Clemons's post-arrest statements formed the basis for the relevant conduct in his pre-

22

sentence report, they did not adversely affect his sentence.  Based upon the evidence at

trial, Clemons was convicted of possessing with intent to distribute 250.10 grams of

crack cocaine.  (D.I. 69 at AA -19-23, 40-47, 95-99, 111-112.)  A conviction for 250.10

grams of crack cocaine leads to a base offense level of 34.  *See* U.S.S.G. § 2D1.1(c)(3).

With a base offense level of 34, and a criminal history category of VI, Clemons's range

of imprisonment was 262 to 327 months.  *See* U.S.S.G. Chapter 5, Pt.A (Sentencing

Table).  However, the Court could only impose a maximum statutory sentence of 240

months (20 years) because count one of the November 1999 Indictment for which

Clemons was convicted did not allege a quantity of crack cocaine.  (D.I. 49 at 35-39.)

*See United States v. Campbell*, 295 F.3d 398, 404 (3d Cir. 2002) (when a defendant is

convicted for distributing cocaine base pursuant to an indictment that does not allege the

quantity of cocaine base, "a district court may not impose a sentence in excess of the

maximum set forth in 21 U.S.C. 841(b)(1)(C)," and, "[u]nder this 'catch-all' or 'default'

provision, the maximum penalty for a defendant without a prior felony drug conviction is

20 years.").  In short, even if Clemons's post-arrest statements formed the basis of the

relevant conduct listed in the pre-sentence report, those statements and conduct did not

adversely affect his sentence because, based on the offenses of conviction, his

sentencing guideline range was already above the statutory maximum and he was

sentenced within that range.  Therefore, defense counsel's alleged failure to file a

suppression motion with respect to the statements did not prejudice Clemons.

### 6.    Counsel failed to discover that the Government used an electronic tracking device without proper authorization

In his supplemental § 2255 motion, Clemons contends that counsel was unaware of the fact that the FBI used an electronic surveillance device without first receiving the authorization required by Federal Rule of Criminal Procedure § 2518.[16]  Once again, Clemons attributes counsel's failure to know this "fact" on counsel's lack of investigation. (D.I. 61.)  Purportedly to support this claim, Clemons filed a copy of a document titled "Federal Bureau of Investigation" detailing the installation of a beeper tracking device on a vehicle and listing the intended subjects of the tracking device as "Damon Smith, a/k/a Clinton Fletcher," and an organized gang known as "New York Boys." (D.I. 62)  The names "Damon Smith" and "Clinton Fletcher" are not included in the aliases listed in Clemons's November 1999 Indictment.  As a result, I am unable to discern whether Clemons filed the authorization form to illustrate that there was a proper procedure that was not followed in his situation, or to illustrate that the proper procedure was initiated but not fully executed.  In either case, the unsigned form does not provide factual support for his vague allegation.  Thus, I will deny the claim as unsupported by the record.

### 7.    Appellate counsel's failure to raise a Fed. R. Evid. 704(b) issue on appeal

Federal Rule of Evidence 704(b) prohibits expert witnesses from testifying with respect to the mental state of a defendant in a criminal case and from stating an opinion or inference as to whether the defendant had the mental state constituting an element of

---

[16]Apparently, Clemons means 18 U.S.C. § 2518.

the crime charged.  In the Third Circuit, "[e]xpert testimony is admissible if it merely 'support[s] an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.'"  *United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001).  However, if a prosecutor asks whether the substance in question was possessed with the intent to distribute or with the intent to personally use the drug, the question violates Rule 704(b) because "it is plainly designed to elicit the expert's testimony about" the defendant's intent and the purpose of his actions.  *Id*. at 305-06, 309-10.

During Clemons's trial, Sullivan testified as to the events surrounding Clemons's arrest and the seizure of the black nylon satchel and evidence contained therein. Through questioning, the prosecutor established Sullivan's training and experience with the FBI and other law enforcement agencies, as well as Sullivan's past experience testifying in Federal and State courts as an expert on cocaine base distribution. Clemons complains that counsel should have argued on appeal that the Government violated Federal Rule of Evidence 704(b) by presenting the following expert testimony on the ultimate issue of his intent to distribute the seized cocaine base:[17]

> Q:    In the next series of questions, I'm going to ask you for answers based upon your training and experience.
> On October 15th, 1998, what amount of crack cocaine base would a user normally carry?  A person carrying it for use?
>
> A:    That would vary depending on the habit and the person.  But on an average, fifty to a hundred dollars worth.

---

[17]In the first excerpt, Clemons actually only challenges the testimony that is emphasized.  I have included the other testimony for context.

25

Q:     And what would that translate to into - - in grams or percentages of grams of crack cocaine base?

A:     1 gram, or when broken down, ten times, which is a tenth of a gram. That's how it's sold on the street. A dime, which is $10 worth.

Q:     So during on or about October 15th, 1998, the amount of crack cocaine base that a user would normally carry would be 1 gram or less; is that correct?

A:     1 gram would be excessive. Usually, it's a couple rocks, as they're referred to on the street which, depending on the seller, could be a $5 piece, a $10 piece, again, a $10 piece being a dime. On an average, two pieces.

Q:     And that's considerably less than a gram, two pieces?

A:     Right.

Q:     **On October 15th, 1998, would 250 grams or approximately 9 ounces of crack cocaine base be an amount normally carried by somebody who was a user or distributor?**

Defense Counsel: Your Honor, just for the record, same objection I had asserted before [i.e., that the question is beyond the scope of the detective's expertise and no notification of this in advance of trial].

Court: Overruled.

A:     **There's only one answer to that, and that's for distribution**.

Q:     How is crack cocaine base consumed for the person to get their high?

A:     There's only one way to consume it or ingest it, and that is to smoke it . . .

Q:     Based upon your training and experience, are you familiar with the devices or the drug paraphernalia that people use to smoke crack cocaine base?

A:     All too well.

Q:     Did you see or seize any of those types of devices, drug paraphernalia, to smoke crack cocaine base from the defendant or his possession, bag, Government's Exhibit 3 that day, October 15th, 1998?

A:    There was no paraphernalia whatsoever found on the defendant.

Q:    On October 15th, 1998, what would be the retail and wholesale value of 250 grams of crack cocaine base?

A:    Given the market, it's a lot higher today. Back in October 15th of '98, the average price was a hundred dollars a gram. And that's an average. And that would be on the low end.

Q:    That would be the retail price? . . .

A:    The retail, the street price, the retail price would be $100 a gram.

Q:    So 250 grams would translate into $25, 000 worth of crack cocaine base?

A:    Correct.

Q:    Now, wholesale, say a person bought it as opposed to, per gram, bought it per ounce. What would, for example, the ounce selling price back in October of 1998 of 9 ounces of crack cocaine base?

A:    In that - - that varies . . . . on an average, crack cocaine then would go from anywhere from 600 to a thousand dollars an ounce. . . .

Q:    Are those wholesale and resale values consistent with possession for personal use or possession of crack cocaine base for distribution?

A:    Strictly for distribution.

(D.I. 69 AA-46 through AA-49.)

Clemons also challenges the following questions and answers on re-direct:

Q:    250 grams of crack cocaine base would be approximately 9 ounces? Is that right?

A:    Yes.

Q:    Approximately 9 ounces of crack cocaine base. Did anything that [defense counsel] asked you in cross-examination change your conclusion, your opinion, that that 250 - - 250 grams of crack cocaine base is indicative of distribution as opposed to personal use?

A:    There's only one explanation for that amount of weight, and that is strictly
      for distribution. I've never seen it on a user or a junkie or whatever you
      want to call an individual who has a bad crack habit.

      *     *     *     *     *     *     *     *

Q:    Is your opinion that the possession of a loaded gun near 250 grams of
      crack cocaine base is indicative of distribution as opposed to personal
      use?

A:    It's very indicative of someone involved in distribution.

(D.I. 69 AA-90 to AA-91.)

These excerpts demonstrate that the prosecutor did not ask Sullivan to opine on

Clemons's intent with respect to the drugs he possessed; rather, the prosecutor asked

whether the quantity of the drugs, as well as the possession of a gun along with that

quantity, indicated distribution or personal use. That type of questioning pertained to

inferences that could be drawn from the surrounding facts, not to Clemons's state of

mind. Thus, the prosecutor's questions did not violate Federal Rule of Evidence 704(b).

Having determined that the Rule 704(b) issue is meritless, it necessarily follows

that counsel did not act unreasonably in failing to raise the issue on appeal, nor was

Clemons prejudiced by such an omission. Accordingly, I will deny this claim.

> **8.    Counsel's failure to appeal the sentence on the basis that the
> Court erred in applying the "preponderance of the evidence"
> standard in determining that the drugs seized were crack
> cocaine rather than generic cocaine base**

In the Third Circuit, "sentences imposed under the Guidelines for defendants who

possess crack will be higher than for defendants who possess other forms of cocaine

base."[18]  *United States v. Barbosa*, 271 F.3d 438, 465 (3d Cir. 2001).  Clemons

contends that the jury found that the drug was generic cocaine base, not crack cocaine,

because the clerk announcing the jury's verdict stated the guilty verdict for count one as

"possession with intent to distribute cocaine base," not "possession with intent to

distribute cocaine base, a.k.a. crack."  (D.I. 55 at 28; D.I. 65 at 21.)  Consequently,

Clemons contends that his guideline range should have been calculated using the lower

base offense level for generic cocaine base rather than the level for crack cocaine.

Even though Clemons was sentenced under 21 U.S.C. § 841(b)(1)(C) to the maximum

statutory sentence of twenty years, and not under the higher guideline level determined

at sentencing,[19] he argues that the Court would have had greater discretion to sentence

him to a sentence shorter than twenty years had his guideline level been lower to start.

    After Clemons's trial and sentencing, counsel determined that there were no non-

frivolous appealable issues and appropriately filed an *Anders* brief in the Third Circuit

---

    [18]The courts of appeals are split over the issue whether the federal sentencing
scheme contains two different definitions of cocaine base: the Sentencing Guidelines
define cocaine base as "crack," but 21 U.S.C. § 841 appears to apply to any form of
cocaine base.  The Second and Third Circuits view the definition of cocaine base
contained in § 841 to include more than crack, at least for a minimum mandatory
sentence imposed under § 841(b)(1).  *See United States v. Jackson*, 59 F.3d 1421,
1422-24 (2d Cir. 1995); *United States v. Barbosa*, 271 F.3d 438, 467 (3d Cir. 2001)
(holding that "'cocaine base' encompasses all forms of cocaine base with the same
chemical formula when the mandatory minimum sentences under 21 U.S.C. § 841(b)(1)
are implicated.").  In contrast, the Fourth, Seventh, Eighth, and Eleventh Circuits have
held that § 841's reference to cocaine base should be construed to include only crack,
as defined in the Sentencing Guidelines.  *See United States v. Booker*, 70 F.3d 488,
494 (7th Cir. 1995); *United States v. Jackson*, 64 F.3d 1213, 1219 (8th cir. 1995); *United
States v. Fisher*, 58 F.3d 96, 99 (4th Cir. 1995); *United States v. Munoz-Realpe*, 21 F.3d
375, 377-78 (11th Cir. 1994).

    [19]*See infra* pp. 30-32.

Court of Appeals. Although the *Anders* brief listed seven claims, it did not allege that the Court erred in finding crack cocaine by using the preponderance of the evidence standard. Clemons therefore argues that counsel provided ineffective assistance by omitting the claim from the appellate brief.

The facts do not support this claim of ineffective assistance. As an initial matter, the Court correctly applied the preponderance of the evidence standard in determining that the drugs seized during Clemons's arrest were crack cocaine. *See United States v. Brigman*, 350 F.2d 310, 313 (3d Cir. 2003) (noting that the preponderance of evidence standard is properly used when applying U.S.S.G. § 2D1.1 for cocaine base ("crack cocaine")). More significantly, however, the record clearly and convincingly establishes that the jury found the drug in question to be crack cocaine. The jury verdict sheet signed by the jury foreperson explicitly states that the jury found beyond a reasonable doubt Clemons guilty of possession with intent to distribute "cocaine base, a/k/a crack," the November 1999 Indictment lists the substance as "cocaine base, a/k/a crack," and the jury was instructed to decide whether the substance was "cocaine base, a/k/a crack." (D.I. 69 AA-1331-134, AA-142.) Accordingly, I conclude that counsel did not act unreasonably in omitting this baseless allegation from the *Anders*' brief.

### 9.    Appellate counsel failed to present an *Apprendi* claim

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." With respect to *Apprendi*'s application to indictments, both

the United States Supreme Court and the Third Circuit Court of Appeals have held that a sentencing court does not violate *Apprendi* if the court uses facts not charged in the indictment and proven to the jury to determine the sentence, provided that the defendant's sentence does not exceed the maximum penalty for the facts proven to the jury. *See United States v. Parmelee*, 319 F.3d 583, 591-92 (3d Cir. 2003) (citing *Harris v. United States*, 536 U.S. 545 (2002)).

Here, Clemons contends that counsel was ineffective for failing to argue on appeal that the Court violated *Apprendi* at sentencing by using the relevant conduct listed in the pre-sentence report to increase the total weight of the cocaine involved by 15 kilograms, and the weight of the crack cocaine by 500 grams, because that conduct was neither charged in the November 1999 Indictment nor proven to the jury. Because count one of the November 1999 Indictment did not allege, and the jury was not instructed to determine, a quantity of drugs, Clemons had to be sentenced under the "catch-all" provision of 21 U.S.C. § 841(b)(1)(C). Pursuant to 21 U.S.C. § 841(b)(1)(C), the statutory maximum sentence applicable to unspecified amounts of controlled substances is twenty years (240 months) of imprisonment. Thus, even though the Court did accept the increased quantity of drugs listed in the pre-sentence report, the Court did not violate *Apprendi* because it still sentenced Clemons within the permissible statutory maximum 20 year sentence under 21 U.S.C. § 841(b)(1)(C). *See United States v. Vazquez*, 271 F.3d 93, 96-98 (3d Cir. 2001).

Additionally, counsel did raise on appeal a claim substantially similar to the one now presented by Clemons, namely, that  the Court should have dismissed the

November 1999 Indictment for violating *Apprendi* because it did not allege a specific

weight of crack cocaine. The Court of Appeals for the Third Circuit denied Clemons's

*Apprendi* claim as meritless because Clemons's sentence under § 841 did not exceed

twenty years. *Doe Boy*, 29 Fed. Appx. at 92-3 ("an *Apprendi* violation only occurs if the

drug quantity is not found by a jury beyond a reasonable doubt and the defendant's

sentence under §841 exceeds 20 years." ) (citing *United States v. Vasquez*, 271 F.3d 93

(3d Cir. 2001)).

Accordingly, I will deny this claim because counsel's failure to raise a meritless

*Apprendi* claim on appeal did not constitute ineffective assistance.

### 10.    Counsel's overall failure to investigate case and file pre-trial discovery motions

Finally, the Government interprets Clemons's general allegations that counsel

was ineffective for failing to investigate his case -- as evidenced by his failure to file any

pre-trial or discovery motions, subpoena any witnesses for trial, request reports

regarding any and all forensic tests with respect to his case, and challenge the arrest

warrant and affidavit for the arrest warrant -- as an independent ineffective assistance of

counsel claim. (D.I. 69 at 4-9.) When analyzing an ineffective assistance of counsel

claim alleging a failure to investigate, a court must review the decision not to investigate

"for reasonableness in all the circumstances, applying a heavy measure of deference to

counsel's judgments." *Strickland*, 466 U.S. at 691; *Kimmelman v. Morrison*, 477 U.S.

365, 384 (1986). Further, a court may first analyze an ineffective assistance claim under

the prejudice prong of *Strickland*, before analyzing the performance prong. *Strickland*,

466 U.S. at 697. If a petitioner alleges that counsel failed to investigate his case,

32

prejudice under *Strickland* is demonstrated by showing what a "proper" investigation would have produced and that the information would have ended in a different result. *See United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996); *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987).

Aside from the specific examples previously discussed, Clemons has not identified what a further investigation would have produced, nor has he identified other motions that should have been filed, particular witnesses that should have been subpoenaed, or the testimony such witnesses would have provided. Therefore, I will deny the instant claim because such vague and general allegations fail to demonstrate that counsel provided ineffective assistance. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).

Additionally, Clemons has failed to establish prejudice. As articulated in *Strickland*, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by [counsel's] errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696; *see also Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) (holding that ineffective assistance of counsel claims alleging a failure to investigate are generally considered in light of the strength of the government's case). The evidence introduced at Clemons's trial was sufficient to establish Clemons's guilt with respect to both charges. For example, to establish that Clemons violated 21 U.S.C. § 841(a)(1), (b)(1)(A), the Government had to provide evidence sufficient to convince a trier of fact beyond a reasonable doubt that: 1) Clemons possessed crack cocaine; 2) he knew that he possessed the crack cocaine; and 3) he intended to distribute the crack

cocaine. *See United States v. Kim*, 27 F.3d 947, 959 (3d Cir. 1994). At trial, Dr.

DasGupta, a highly qualified forensic chemist experienced in testing drugs, testified that

the tests were 100% conclusive in establishing that the drugs were crack cocaine. He

also testified that the appearance of the drugs corresponded to the numerous samples

of crack cocaine he tested over the years. Officer Sullivan, who is knowledgeable and

trained in the investigation of crack cocaine distribution and the identification of crack

cocaine, also identified the 250.10 grams seized from Clemons's satchel as crack

cocaine. Sullivan testified that the satchel contained items with Clemons's photograph

and his alias "Clinton French," as well as a loaded nine millimeter semi-automatic

firearm and an extra clip of ammunition.[20]  The crack cocaine and the other items were

on top of each other and in plain view in the satchel. Finally, Sullivan testified that the

quantity of crack cocaine seized from Clemons (250 grams), as well as the street value

of the drugs ($25,000 retail), was indicative of distribution rather than personal use.

The fact that the crack cocaine was seized from a satchel that Clemons had been

carrying was sufficient to establish that Clemons had knowing or constructive

possession of crack cocaine. *See United States v. Crippen*, 459 F.2d 1387, 1388 (3d

Cir. 1972). The large quantity of crack cocaine seized from Clemons's possession, its

monetary value, and the gun, provided a reasonable basis for the jury to infer that

Clemons was distributing the crack cocaine. *See United States v. Davis,* 397 F.3d 173,

---

[20]The pieces of identification included: a wallet with identification in the name of
Clinton French, a Florida driver license with Clemons's picture, an MBNA Visa Card and
an MBNA Mastercard, both in the name of Clinton French, an US Airways dividend
mileage card in the name of Clinton French, and a bounty hunter's ID with Clemons's
picture. (D.I. 25 at 46-47, 66-78.)

34

181 (3d Cir. 2005) (holding that "the presence of drugs in this case together with the guns and the number of people in the car provided a reasonable basis for the jury to conclude that the defendants were engaged in drug trafficking."); *United States v. Nolan,* 718 F.2d 589, 593 (3d Cir. 1983) (large profits from small quantity of morphine sufficient to allow a jury to infer an intent to distribute); *United States v. Wright*, 845 F. Supp. 1041, 1056 (D. N.J. 1994) (collecting cases). Therefore, I conclude that, even if counsel performed deficiently in the manner alleged by Clemons, Clemons was not prejudiced by such failures; he cannot demonstrate that, but for counsel's alleged deficiencies, the outcome of his proceeding would have been different.

Similarly, there was sufficient evidence for a rational trier of fact to find that Clemons committed the crime of carrying a firearm during and in relation to his possession with intent to distribute crack cocaine in violation of 18 U.S. C. § 924(c). To establish that Clemons violated § 924(c), the Government had to establish that: 1) Clemons knowingly carried a firearm; and 2) Clemons knowingly carried a firearm during and in relation to that possession with intent to distribute crack cocaine as charged in count one of the November 1999 Indictment. *See Muscarello v. United States*, 524 U.S. 125, 126-27, 139 (1998).

"[T]he presence of a gun in connection with the commission of another felony permits the inference that the gun was intended to facilitate or potentially facilitate the crime." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (citing *United States v. Williams*, 344 F.3d 365, 371-72 (3d Cir. 2003)); *see also United States v. Hill*, 967 F.2d 902, 905 (3d Cir. 1993) ("Possession of a firearm constitutes use under 18 U.S.C. § 924(c) where there is evidence 'that the defendant intended to have the firearm available

35

for use during a crime of violence or drug trafficking crime and that the firearm was placed in a spot where it was readily accessible at that time.'") (citing *United States v. Reyes*, 930 F.2d 310, 313-14 (3d Cir. 1991)).  Sullivan testified that, at the time of Clemons's arrest, Clemons was carrying the black satchel containing a loaded operable nine millimeter semi-automatic firearm, an extra clip of ammunition, 250 grams of crack cocaine, and several pieces of identification.  Sullivan also testified that, based on his experience, crack cocaine distributors normally carry firearms to protect themselves, their drugs, and proceeds from their drug sales.  That evidence provided a reasonable basis for the jury to infer that Clemons was "carrying" the gun for the purposes of § 924(c)(1).  *E.g., Muscarello*, 524 U.S. at 126-27 (holding that the term "carries a firearm" under § 924(c) includes knowing possession, and conveyance, of a firearm, even in a locked glove box, or trunk, of a car that the defendant occupies.); *see also United States v. Gumbs*, 962 F. Supp. 53, 54-55 (D. V.I. 1997) (holding that evidence showing defendant was carrying a bag in his hand that contained gun and marijuana was sufficient to support a finding that defendant was "carrying" under § 924(c)), *aff'd, United States v. Gumbs*, 151 F.3d 1027 (3d Cir. 1998); *cf. United States v. Garth*, 188 F.3d 99, 111-13 (3d Cir. 1999) (finding that there was insufficient evidence that the defendant carried the gun for purposes of § 924(c)(1) because there was no evidence that the defendant owned the bag containing the gun and drugs or anything else in the bag).

In short, once the jury determined that Clemons possessed the crack cocaine base with the intent to distribute it, Sullivan's testimony that the gun was found in the same satchel provided sufficient evidence to enable the jury to conclude that Clemons had violated 18 U.S.C. § 924(c).  Consequently, Clemons cannot demonstrate that, but

for counsel's alleged deficiencies, the outcome of his proceeding would have been different.

Accordingly, I will deny this claim as meritless.

### C.    Motion For Reconsideration And For Bond Pending Consideration Of § 2255 Motion

Clemons filed a motion for reconsideration of my previous order permitting the Government to amend its answer and expand the record. (D.I. 75.) Clemons also filed a motion to be released on bond pending consideration of his § 2255 motion. (D.I. 79.) I am dismissing Clemons's § 2255 motion after determining that his claims are without merit. Therefore, I will deny the two pending motions as moot. (D.I. 75; D.I. 79.)

### V.    CERTIFICATE OF APPEALABILITY

Finally, I must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

I am dismissing Clemons's § 2255 motion to vacate after determining that all of the claims contained therein are meritless. I am persuaded that reasonable jurists would not find my assessments debatable. Therefore, Clemons has failed to make a substantial showing of the denial of a constitutional right, and I will not issue a certificate of appealability.

37

## VI.    CONCLUSION

For the reasons stated, Clemons's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence is dismissed.  An appropriate order shall issue.