IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CHRISTOPHER CLEMONS,
        Petitioner,

v.

UNITED STATES OF AMERICA,
        Respondent.

Civ.A.No.03-319-GMS
Cr.A.No.99-82-GMS

* KENT A. JORDAN

---

NOTICE OF APPEAL AND REQUEST

FOR A CERTIFICATE OF APPEALABILITY

PURSUANT TO 28 U.S.C. §2253

---

I.

BACKGROUND

Petitioner Christopher Clemons (hereinafter petitioner), hereby respectfully submits his **Notice of Appeal** and applies to this Honorable Court for a **Certificate of Appealability** pursuant to 28 U.S.C.§2253. On March 28, 2006, district judge Kent A.Jordan denied petitioner's motion to Vacate, Set Aside, or Correct his sentence pursuant to

---

*Kent A. Jordan denied the petitioner's 28 U.S.C.§2255 Motion to Vacate Conviction and Sentence by a person in federal custody and thereafter petitioner filed a Motion to Alter or Amend judgement pursuant to Rule 59(a) and (e); which was denied by District Judge Gregory Moneta Sleet; whom the case was assigned when judge Jordan seat became vacant because of his appointment to the court of Appeals for the Third Circuit.

28 U.S.C.§2255. (see order dated March 28, 2006 "Memorandum Opinion").

On April 11, 2006 petitioner filed a "Motion to Alter or Amend Judgement pursuant to Rule 59(a) and (e) of the Fed.Rules of Crim. Proc. On July 12, 2007 district Judge Gregory M. Sleet denied petitioner's Rule 59 motion. (see Order dated July 12, 2007)

Former District Court Judge Kent A Jordan denied petitioner's 28 U.S.C.§2255 Motion in respect to each argument raised; which consisted of the following:

(A) DEFENSE COUNSEL'S DEFICIENT PERFORMANCE RENDERED THE TRIAL PROCEEDINGS CONSTITUTIONALLY INADEQUATE IN VIOLATION OF DEFENDANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS FIFTH AMENDMENT RIGHTS TO DUE PROCESS OF LAW.

1.  COURSE EVENTS, SPECIFIC ERRORS AND OMISSIONS WHICH DENIED DEFENDANT THE EFFECTIVE ASSISTANCE OF COUNSEL, RESULTING IN AN UNFAIR TRIAL.

2.  IF COUNSEL HAD CONDUCTED DISCOVERY AND EVIDENCE IN QUESTION WOULD HAVE BEEN SUPPRESSED, THERE IS REASONABLE PROBAILITY THAT THE RESULTS WOULD HAVE BEEN DIFFERENT.

3.  COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS STATEMENTS MADE BY THE DEFENDANT BEFORE TRIAL.

4.  COUNSEL WAS INEFFECTIVE FOR FAILING TO HAVE THE NEW INDICTMENT DISMISSED, WHICH WAS BROADENED AND SUBSTANTIALLY AMENDED BY THE GOVERNMENT AFTER THE LIMITATION PERIOD.

(B) ATTORNEY JOHN S. MALIK NOMINAL REPRESENTATION ON APPEAL DID NOT SUFFICE TO RENDER THE PROCEEDING CONSTITUTIONALLY ADEQUATE, THUS REPRIVING THE DEFENDANT OF A BENEFICIAL DIRECT APPEAL.

1.  COUNSEL WAS INEFFECTIVE IN FAILING TO APPEAL THE DISTRICT COURTS SENTENCING OF DEFENDANT TO "CRACK" COCAINE BY A PREPONDERANCE OF THE EVIDENCE, WHEN THE JURY MADE A CLEAR AND UNANIMOUS DECISION THAT THE DRUG WAS COCAINE BASE(POWDER).

2.  COUNSEL WAS INEFFECTIVE IN FAILING TO APPEAL THE GOVERNMENT'S ELICITING OF EXPERT TESTIMONY CONCERNING THE DEFENDANT'S MENTAL STATE, WHICH VIOLATE RULE 704(b) PRECLUDING EXPERT TESTIMONY WITH RESPECT TO WHETHER DEFENDANT HAD THE MENTAL STATE CONSTITUTING THE ELEMENT OF THE CRIME CHARGED.

3.  COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE DISTRICT

2

COURT'S VIOLATION OF APPRENDI WHEN IT ALONE DETERMINED
THE QUANTITY OF DRUGS BY A PREPONDERANCE OF THE EVIDENCE
AT THE SENTENCING PHASE.

Petitioner raised several addidtional arguments in a "Supple-
mental Attachment" in support of his motion to vacate his conviction
and sentence, which consisted of the following:

(A)1. COUNSEL'S FAILURE TO CONDUCT DISCOVERY COMBINED WITH
HIS FAILURE TO INVESTIGATE MADE HIM UNAWARE THAT THE
GOVERNMENT USED AN ELECTRONIC SURVEILLANCE DEVICE WITH-
OUT FIRST RECEIVING PROPER AUTHORIZATION.

(A)2. COUNSEL WAS INEFFECTIVE FOR FAILING TO HAVE THE INDICTMENT
DISMISSED, BASED ON THE GROUNDS THAT THE DEFENDANT
WAS ACQUITTED ON THE CHARGES HE WAS INDICTED FOR, AND
CONVICTED ON A BASIS OF FACTS NOT FOUND  OR PRESENTED
TO THE GRAND JURY THAT INDICTED HIM.

(B)1 COUNSEL WAS INEFFECTIVE IN FAILING TO APPEAL THE DISTRICT
COURT'S USE OF RELEVANT CONDUCT; THAT WAS APART FROM
THE OFFENSE OF CONVICTION.

(B)2 COUNSEL WAS INEFFECTIVE FOR FAILING TO APPEAL THE
DISTRICT COURT'S VIOLATION OF STATUTORY PROVISION 841(b)(1)(C).

(see"Supplemental Attachment with appendix in Support of
Defendant's Motion to vacate conviction and Sentence under 28
USC§2255" filed May 12, 2003).

On May 16, 2003 the government filed its answer to petitioner's
28 U.S.C.§2255 motion stating the following:

I. CLEMONS' ATTORNEY DID NOT PROVIDE INEFFECTIVE ASSISTANCE
OF COUNSEL BY NOT FILING DISCOVERY MOTIONS, NOT SUB-
POENING WITNESSES, AND FAILING TO REQUEST FORENSIC AND
SCIENTIFIC REPORTS.

II. CLEMONS' ATTORNEY DID NOT PROVIDE INEFFECTIVE ASSISTANCE
OF COUNSEL DURING HIS CROSS-EXAMINATION OF DR. DASGUPTA.

III. CLEMONS' ATTORNEY DID NOT PROVIDE INEFFECTIVEASSISTANCE
OF COUNSEL BY NOT MOVING TO SUPPRESS CLEMONS' POST ARREST
STATEMENTS.

IV. CLEMONS' ATTORNEY DID NOT PROVIDE INEFFECTIVE ASSISTANCE
OF COUNSEL BY NOT MOVING TO DISMISS THE INDICTMENT ON
STATUTE OF LIMITATIONS GROUNDS UNDER 18 U.S.C.§3238.

V. CLEMON'S ATTORNEY DID NOT PROVIDE INEFFECTIVE ASSISTANCE
OF COUNSEL BY NOT FILING A PRE-TRIAL MOTION TO SUPRESS
THE EVIDENCE SEIZED IN THE SEARCH OF HIS SATCHEL.

VI. CLEMONS' ATTORNEY DID NOT PROVIDE INEFFECTIVE ASSISTANCE
OF COUNSEL BY NOT RAISING A FED.R.EVID. 704(b) ISSUE ON
APPEAL.

VII. CLEMON'S ATTORNEY DID NOT PROVIDE INEFFECTIVE ASSISTANCE
OF COUNSEL BY NOT APPEALING THE DISTRICT COURT SENTENCING
OF CLEMONS FOR CRACK COCAINE BASE UNDER THE PREPONDERANCE
OF THE EVIDENCE STANDARD.

(see "Answer of the United States of America, Respondent"
filed on May 16, 2003).

On June 13, 2003 petitioner filed a "Traverse", motion in
opposition to the government's response; reaffirming each argument
presented in the "Motion to Vacate, Set Aside, or Correct Sentence
pursuant to 28 U.S.C. §2255. (see "Traverse" filed June 16, 2003).

Upon the United States Attorney's Office receiving its copy
of the "Traverse"; thereof immediately filed a "Motion for leave
to File an Amended Answer" with Appendix.(see"Motion for leave
to File Amended Answer" and "Appendix To Motion For Leave To
File Amended Answer" filed June 30, 2003).

The government asserts in its "Motion to Amend" that the
reason for an amended answer is that "The Traverse reiterated an
allegation that the thirty day speedy indictment rule had been violated.
Id. Additionally, the petitioner added for the first time that
the prosecution was vindictive in filing the second indictment
which exposed the defendant to harsher penalties...In it's May
16, 2003 Answer, the United States made a general denial concerning
petitioner's claim (see Docket Item 63, page 1). The United States
specifically addressed the petitioner's argument that the petitioner's
attorney did not provide ineffective assistance of counsel by not

4

by not moving to dismiss the indictment on statute of limitation
grounds under 18 U.S.C.§3238 [see Docket Item 63,pp.16-17] but did
not specifically address petitioner's 30 day speedy indictment argument
reference in the §2255Motion and repeated in the Traverse." (see
"Motion For Leave To File Amended Answer pgs.1-2).

On July 2, 2003 the United States Attorney again presented the
court with the **"Government's Motion For Court to Direct That The
Record Be Expanded Under Rule 7 of the Rules Governing Section 2255
Proceedings or, Alternatively, For Leave to File a Motion for Leave
to File a Second Amended Answer."** (see Government's motion filed
July 2, 2003)

The reason for the government's submitting of the above motion
was to "expand the record to include the Motion to Withdraw Waiver
of Indictment and Guilty Pleas, and Order granting that motion,
in Cr.A.No.98-109-1-RRM, or alternatively for the court to grant
leave to the United States to file an Amended Motion For leave to
file an Amended Answer."

On July 13, 2003 petitioner filed a **"Motion in Response to the
Government's Motion to Expand the Record Under Rule 7 of the Rules
Governing Section 2255, or Alternatively, for Leave to file a Motion
for Leave to File a Second Amended Answer ."**

The purpose of this motion was to  object to the government
being granted the opportunity to file a Second Amended answer because
of its failure to properly address the issue in its initial brief,
to oppose the government's motion to expand the record by adding
the motion to withdraw waiver of indictment and guilty plea, and
court order; and to notify the court that petitioner does not oppose
the government's filing of a second amended answer as to the "Vindic-

tive Prosecution" claim (which was raised for the first time in the "Traverse" response brief) as long as petitioner is afforded the opportunity to file an amended response to the government's answer, which is in accord with Rule 7(c) of section 2255 proceedings.

On July 29, 2004 petitioner filed a **"Request For Judicial Notice of Ajudicative Facts."** The purpose of this request was to notify the court of the Blakely v  Washington decision by the Supreme Court and its applicability to the presently pending §2255 motion before the court.

On September 10, 2004 Kent A. Jordan issued an **Order** in the following:

1. THE GOVERNMENT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER IS **GRANTED**. (D.I.67), AND THE RED LINED VERSION OF THE GOVERNMENT'S AMENDED ANSWER, (D.I.69.), ARE CONSIDERED FILED WITH THE COURT.

2. THE GOVERNMENT'S MOTION TO EXPAND THE RECORD UNDER RULE 7 OF THE RULES GOVERNING SECTION 2255 PROCEEDING IS **GRANTED.** (D.I.70). THE RECORD NOW INCLUDES CLEMONS' "MOTION TO WITHDRAW WAIVER OF INDICTMENT AND GUILTY PLEAS", AND THIS COURT'S "ORDER" DATED JANUARY 4, 2000, WHICH ARE INCLUDED AS EXHIBIT 1 TO DOCKET ITEM 70.

3. CLEMONS MOTION TO DENY IN PART AND GRANT IN PART THE GOVERNMENT'S MOTION IS **DENIED**(D.I.71)*

4. CLEMON'S REQUEST THAT THE COURT CONSIDER WIGGINS V. SMITH, 123 S.CT.2527(2003) WHEN IT REVIEWS HIS §2255 MOTION IS **GRANTED.**

On September 17, 2004 petitioner filed a **"Motion for Reconsideration"**. The purpose for filing the motion for reconsideration was to inform the court that "by allowing the government to respond to the vindictive prosecution(claim) and not allow petitioner to state his position

---

* Kent A. Jordan also denied petitioner's request to file an amended response to the Government's Amended Answer despite granting the government's Motion to Amend. (see **"Memorandum Order"**pg3 dated September 10, 2004).

and how this has occurred causes the petitioner to be faced with undue prejudice." Moreover, "the government did not offer a reason for omitting the question from its response" or "it's failure to address the 30 day speedy indictment requirement in its answer...had the petitioner been afforded the same comeuppance as the government, the above indictment would have been dismissed because procedural rules apply to the government as well as the defendant."(see " **Motion for Reconsideration of Memorandum Order Denying Petitioner's Motion In Opposition to the Government's Motion to Expand the record or Alternatively for Leave to File a Second Amended Answer**"pgs3-4).

On December 19, 2005 petitioner filed a **"Motion for Bond Pending Consideration of Petition for Writ of Habeas Corpus"** The purpose of this motion was to seek bond; due to the extreme length of time the habeas corpus §2255 motion had been pending; and which is appropriate when a petitioner has raised substantial constitutional claims which have a high probability of success.

On March 28, 2006 Kent A. Jordan denied petitioner's 28 U.S.C. §2255 motion; each issue in which relief was requested, while simulta- neously denying the "Motion for Reconsideration" which was filed on September 28, 2004 and the Motion for Bond which was filed on December 19, 2006 (see **"Memorandum Opinion"** issued March 28, 2006).

On March 31, 2006 petitioner filed a **"Motion to Disqualify Judge from Proceeding Further in Cause Due to Possible Bias and Prejudice."** The purpose of this motion was to repsectfully request that Kent A Jordan voluntarily excuse himself from further participation in the proceedings due to possible bias and prejudice; deriving from his duties in his former capacity as an Assistant United States

7

Attorney, at which time he worked hand and hand in criminal investi-
gations/prosecutions with the prosecuting assistant United States
attorney in the instant case. In addition to a personal prejudice
toward movant because of his professional respect for and friendship
with counsel who represented the petitioner and in whom he worked
with during his tenure in private practice.(see also **"Affidavit
of Prejudice in Support of Motion to Disqualify Judge" and "Certi-
ficate of Good Faith in Support of Motion to Disqualify."** filed
on same date) and **(Supplemental Attachment In Support of Petitioner's
Motion to Disqualify Due to Possible Bias and Prejudice"**, filed
**November 7, 2006.)**

Each of the motions and affidavits were forwarded to then Chief
Judge Sue L. Robinson to Rule upon if after considering all the
circumstances, judge Jordan declined  to voluntarily recuse himself.

On April 11, 2006 petitioner filed a **"Motion to Alter or Amend
Judgement Pursuant to 59(a) and (e) of the Fed.R. Crim.Proc."** The
purpose for the filing of this motion was to request that the court
open the judgement, take documentary evidence. revisit issue six
in the section 2255 motion, amend the new findings. and direct the
entry of a new judgement.

On July 13, 2007 petitioner was notified by the Office of the
Clerk that the pending cause had been reassigned to District Judge
Gregory M. Sleet (this reassignment occurred because of Kent A.
Jordan judgeship vacancy). In addition to this notification petitioner
also received an Order dated July 12, 2007 denying petitioners Rule
59(a) and (e) motion to Alter or Amend Judgement pursuant to the
Federal Rules Civil Procedure; as well as the denial of the "Motion
to Disqualifying Judge Jordan from proceeding further."(Denied as Moot).

8

II

DISCUSSION

Title 28 U.S.C. §2253(c)(2), as revised by the Antiterrorism and Effective Death Penalty Act of 1996("the Act"), effective April 24, 1996, requires a §2255 movant who appeals a denial of his/her motion by the District Court to obtain a **"Certificate of Appealability"** by making a "substantial showing of the denial of a Constitutional right."28 U.S.C. §2253(c)(2). The "Act" further requires that the Certificate of Appealability "indicate which specific issue or issues" are found to be appealable. 28 U.S.C §2253(c)(3).

The right to effective assistance of Counsel is the most funda-mental of rights because counsel's skill and knowledge is necessary to accord the defendant an ample opportunity to meet the case of the prosecution. Stricklandv. Washington, 466 U.S. 668, 685(1984). In Strickland, the court established two avenues for a claim of ineffective assistance of counsel.

**First**, Strickland, noted that a defendant may be denied the Sixth Amendment right to effective assistance when counsel fails to render "adequate legal assistance..." claiims of this type are called "actual ineffective claims". Strickland, 455 U.S. at 686, 104 S.Ct. at 2063-2064.

The benchmark for determining effective assistance is whether the attorney's performance was outside the range of professionally competent assistance and; if so, whether there is a **'reasonable pro-bability'** the deficient performance caused the loss of a substantive or procedural right. see also: Williams v. Taylor, 529 U.S. 362, 393, 120 S.Ct.1494, 146 L.Ed2d 389(2000)

9

A "reasonable probability" is a standard less demanding than the preponderance of the evidence standard. Hull v. Kyler, 190 F.3d 88,110(3rd Cir.1999)(prejudice is a reasonable probability sufficient to undermine confidence in the outcome, and this standard is less demanding than the proponderance standard). Strickland, 466 U.S. at 693-94, 104 S.Ct. at 2052" A reasonable probability is a probability sufficient to undermine confidence in the outcome; however, it is less demanding standard than "more likely than not."Id

Moreover, the test for whether a lapse by trial counsel prejudiced the defendant, for the purposes of counsel-effectiveness test of Strickland supra; cannot focus soley on whether the outcome would have been successful absent counsel's shortcomings, but whether the attorney's error made the proceeding unfair and its outcome unreliable. seeLockhart v. Fretwell, 506 U.S. 364, 369(1993)(" an analysis focusing soley on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective").

Second, a defendant may be deprived of the right to effective assistance of counsel if the government "interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." Id.Strickland, 466 U.S. 668, 686, 104 S.Ct.2052, 2063, 80 L.Ed.2d 674(1984); Brady v. Maryland, 373 U.S. 83 at 87, 10 L.Ed.2d 215, 83 S.Ct.1194(1963)(Suppression by the prosecution of evidence favorable to an accused)(Strickler v. Green, 527 U.S.263, 281-82, 144 L.Ed.2d 286, 119 S.Ct.1936(1999) (Suppression of relevant evidence...either willfully or inadvertently). In situations of government interference, the defendant is not required to prove prejudice. Strickland, 466 U.S. at 692, 104 S.Ct.

at 2067.

In petitioner's 28 U.S.C. §2255motion, he presented significant questions as to the effective assistance of counsel, failure of the prosecution to disclose favorable evidence, violation of his Fifth Amendment right to due process, and the sufficiency of the evidence presented to support his conviction.

Petitioner, had a due process right to effective assistance of counsel during trial and appellate proceedings, which he was denied and which is in derogation of his rights under the Sixth Amendment and further deprived of a fair trial when the prosecution failed to provide materially favorable evidence in accordance with established federal rules and precedent; in violation of **Brady** and his Fifth Amendment right to due process.

If petitioner is to receive a fair trial, a **Certificate of Appealability** must issue to provide the Appellate Court with the opportunity to decide the issues removing all doubt as to the fairness of the trial and the reliability of the judgement of conviction resulting therefrom.

Petitioner has clearly made a serious and substantial showing of the denial of his Constitutional rights; all which merit attention. Specifically petitioner is asking the court to take notice of the following issues:

**(1) WAS PETITIONER'S FIFTH AMENDMENT RIGHT TO DUE PROCESS VIOLATED WHEN THE PROSECUTION WITHHELD EVIDENCE WHICH WAS MATERIAL FOR BRADY PURPOSES.**

In petitioner's "Traverse"(motion in response to the government's answer to petitioner's §2255) it was properly pleaded that "the government has a statutory disclosure duty under the Fed.R.of

11

Crim.Proc.-Rule 16, 26.2, and 12.1; to disclose evidence that is
both favorable to the defense and material to either guilt or punishment
and suppression of such evidence deprives the defendant of a fair
trial and thus violates due process."(see "Traverse"pg 7 dated
June 16, 2003); see Slutzker v. Johnson, 393 F.3d 373, 386,(3rd
Cir.2004) It is clearly established that the suppression by the
prosecution of evidence favorable to an accused upon request violates
due process where the evidence is material either to guilt or punish-
ment.

    Under Brady v. Maryland, 373 U.S. 83, 10 L.Ed2d 215, 83 S.Ct.
1194(1963), the prosecution has a constitutional obligation to
turn material exculpatory evidence over to the defendant. This
obligation is independent of any specific request by the defendant
as modified in United v. Agurs, 427 U.S. 97, 96 S.Ct.2392, 49 L.Ed2d
342(1976). Evidence is material "if there is a reasonable probability
that , had the evidence been disclosed to the defense, the result
of the proceeding would have been different."United States v. Bagley,
473 U.S.667, 682, 87 L.Ed.2d 481, 105 S.Ct.3375(1985); see also
Strickler v. Green, 527 U.S. 263, 280, 144 L.Ed2d 286, 119 S.Ct.
1936(1999). Kyles v. Whitley, 514 U.S. 419, 433-34, 131 L.Ed2d
490, 115 S.Ct. 1555(1995).

    Petitioner asserts that the basic import of **Brady** is that
there is an obligation on the part of the prosecution to produce
certain evidence actually or constructively in its possession or
accessible to it in the interest of inherent fairness. "The fact
that the prosecutor has ready access to a veritable storehouse
of relevant facts and, within the ambit of constitutional, statutory

and jurisprudential directives, this access must be shared in the interest of inherent fairness....to provide the fair administration of Justice." <u>Dennis v. United States</u>, 384 U.S. 855, 86 S.Ct. 1849, 16 L.ED2d 973, 986(1966)). This is especially important since it was the tracking device that was placed on petitioner's car which led the government to the evidence which was introduced at trial and used to convict the petitioner.

In <u>Slutzer v. Johnson</u>, 393 F.3d 373, 386 (3rd Cir.2004), the Third Circuit stated that "Brady thus envisions two requirements for overturning a verdict: (1) that evidence in the possession of the government was actually suppressed, and (2) that the suppressed evidence was material." Id.

In the instant case the government never denied the allegations that it withheld the evidence complained of, nor did it respond to the allegations in its response, despite being granted an opportunity to file a second amended answer. Thus, it is undisputed that the prosecution knowingly suppressed the evidence, satisfying the first prong.

The Supreme Court has elucidated the **Brady** materiality standard as follow: " the touchstone for materiality under **Braady** is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." see <u>Slutzker</u> at 387; see aslo <u>Landano v. Rafferty</u>, 856 F.2d 569 (3rd Cir.1988) "the evidence was material.";<u>Gov't of Virgin Island</u>

13

v. Martinez, 780 F.2d 302, 306 (3rd Cir.1985) "possible effects of non-disclosure on the defense's trial preparation."(quoting **Bagley**, 105 S.Ct. at 3384).

Petitioner has met the second prong of **Brady** because there is a reasonable probability that, had the evidence been disclosed to the defendant, the result of the proceeding would have been different.**Strickler v. Green**,527 U.S. 263, 280(1999); moreover a reasonable probability of a different result is shown when the government's suppression of evidence undermine confidence in the outcome, **United States v. Bagley**,473 U.S. 667, 682(1985); see also **Kyles v. Whitley**, 514 U.S. 419, 131 L.Ed.2d490, 115 S.Ct. 1555(1995) "the materiality standard for **Brady** claims is met when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id at 435.;**Banks v. Dretke**; "Brady, we reiterate, held the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Id at 540 U.S. 668(2004)

In sum, the government had actual knowledge of this information and refused to turn it over to the defendant for use at trial, despite their constitutional duty set forth in **Brady** to do so. Petitioner has offered substantial evidence that a surveillance tracking device was placed on his vehicle, such evidence was never turned over, that evidence was favorable to the defense and he was prejudiced by the government's failure to disclose such information. By with-holding this exculpatory evidence and gaining a tactical advantage

14

the government directly abrogated its obligation under **Brady** and
under the ethical rules to disclose **Brady** evidence. Since this evidence
was exclusively in the hands of the prosecution and never turned
over to the defendant, thus denying him of a fair trial; the court
should grant COA on petitioner's claim; because a reasonable jurist
would find it debatable whether petitioner's allegation of a **Brady**
violation states a valid claim of the denial of a constitutional
right; moreover a fact finder could conclude that this information
was potentially material and exculpatory.

> (2) SHOULD THE GOVERNMENT HAVE FIRST OBTAINED JUDICIAL
>     AUTHORIZATION (WARRANT) FOR THE INSTALLATION AND
>     MONITORING OF AN ELECTRONIC TRACKING DEVICE PLACED
>     ON PETITIONER'S VEHICLE.

In petitioner's supplemental attachment brief to his §2255
motion and within his 59(e) motion to Alter and Amend judgement
pursuant F.R.Crim.P; it was properly pleaded that the government
agents violated petitioner's Fourth Amendment subjective expectation
of privacy right when they attached an electronic tracking device
to his car without first obtaining judicial authorization to do so.

Petitioner asserts that the government did not obtain judicial
authorization(warrant) to install or monitor the electronic tracking
device which was placed on his vehicle; a device which recorded
the locations of his vehicle and led the agents to the area in which
petitioner was located, and to the discovery of evidence which was used
to convict him in trial. Thus, the electronic evidence was the fruit
of illegal electronic surviellance, in violation of petitioner's
Fourth Amendment right to his subjective expectation of privacy
that society recognizes as reasonable.

15

As with the previous issue the government never denied the allegation that they placed a tracking device on petitioner's vehicle and monitored it, despite being granted an opportunity to file a second amended answer. Thus, it is undisputed that the government agents knowingly violated petitioner's Fourth Amendment right.

In the instant case the government placed a tracking device on petitioner's vehicle to determine his location and where abouts. As a result of monitoring the tracking device the agents were able to discover petitioner's location, which led to evidence, which subsequently led to his arrest and conviction.

Law enforcement agents may not install a tracking device on a suspect's car and monitor it as they see fit, but have a Constitutional duty to obtain a judicial warrant or order before they install such a device on a private citizen property. United States v. Karo, 468 US 705, 82 L.ED2d 530, 104 S.Ct.3298(1984); which held that "it did violate the Fourth Amendment for the government to monitor a warrantless tracking device while it was inside a person's residence... Those suspected of drug offenses are no less entitled to that protection than those suspected on nondrug offenses. Requiring a warrant will have the salutary effect of ensuring that use of a beeper is not abused by imposing upon agents, the requirement that they demonstrate in advance their justification for the desired search." Id 714-15,18.

It is important to note that the petitioner was arrested in the parking lot of Christiana Medows Apertment Complex, where he resided at, and are only accessed by those who live there or by those given express permission to enter through the twenty-four hour a day monitored security gate.(see pg15 of petitioner's §2255 motion)

In **Karo**, the Supreme Court held that "...the monitoring of a beeper in a private residence, a location not open to visual surveillance violates the Fourth Amendement rights of those who have a justifiable interest in the privacy of the residence...private residences are places in which the individual normally expects privacy free from governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable. Our cases have not deviated from this basic Fourth Amendment principle."Id at 714.

It is even clear from United States v. Knotts, 460 U.S. 276,75 L.Ed.2d 55, 103 S.Ct. 1081(1983), in which the Supreme Court held "...as the owner of the cabin and surrounding premises to which (Petschen) drove, undoubtly had the traditional expectation of privacy within a dwelling place insofar as the cabin was concerned:

> "Crime, even in the privacy of one's own quarters, is
> of course, of grave concern to society, and the laws
> allows such crime to be reached on proper showing.
> The right of the officers to thrust themselves into
> a home is also of grave concern, not only to the
> individual, but to society which choose to dwell in
> reasonable security and freedom from surveillance.
> When the right of privacy must reasonably yeild to
> the right of search is, as a rule, to be decided by
> a judicial officer,not a policeman or government agent."
> **Johnson v. United States**,333 US 10,14,92L.Ed.2d 436,
> 68 S.Ct.367(1948) quoted with approval in Payton v.
> United States,445 US 573, 586, 63 L.Ed.2d 639, 100
> S.Ct.1371(1980) Id.282

As a practical matter the court further stated"...a principle rationale for allowing warrantless tracking of beepers, particularly beepers in or on an auto, is that beepers are merely a more effective means of observing what is already public. But people pass daily from public to private sphere. When a police agents track bugged personal property without first obtaining a warrant, they must do

so at the risk that this enhanced surveillance, intrusive at best, might push fortuitously and unreasonably into the private sphere protected by the Fourth Amendment."Id.at 248, see also <u>Kyllo v. United States,</u>533 U.S.27, 150 L.Ed.2d 94, 121 S.Ct.2038(2001): "We have said that the Fourth Amendment draws a 'firm line at the entrance to the house...'That line, we think, must be not only firm but also bright-which requires clear specification of those methods of surveillance that requires a warrant."Id at 40; <u>Katz v. United State</u>,389 US 347, 19 L.Ed2d 576, 88 S.Ct.507(1967) "the Fourth Amendment Protects against government invasions of a person's reasonable expectation of privacy." Id. at 361; <u>Silverman</u> <u>v.</u> <u>United</u> <u>States</u>, 365 US 505 L.ED.2d734, 81 S.Ct.679(1961) "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion...any physical invasion of the structure of the home, by even a fraction of an inch, was to much.Id.at 511-12.

Each case cited above reinforce the importance of 'privacy expectations' in the Fourth Amendment analysis and because of the petitioner's legitimate expectation of privacy within his home; a warrant was required for the inistallation and monitoring of the tracking device, not during the time it was enroute to petitioner's house, which is public road, but when the car exited the public throughway and entered into the private property of Christiana Meadows. Thus, the agents conduct of monitoring petitioner's movement within the confines of a private location, not open to visual surveillannce or exposed to public view; infringed on petitioner's Fourth Amendment expectation of privacy.

The warrant clause's principle protection lies in the fact that the Fourth Amendment has interposed a magistrate between the

18

citizen and the police, so that an objective mind might weigh the
need to invade ones privacy to enforce the law. In Johnson v.
United States, 333 U.S. 10, 13-14(1948); the Supreme Court explained
that "The point of the Fourth Amendment...is not that it denies
law enforcement the support of the usual inferences which reasonable
men draw from evidence. Its protection consist in requiring that
those inferences be drawn by a neutral and detached magistrate
instead of being judged by the officer engaged in the often competi-
tive enterprise of ferreting out crime. Any assumption that evidence
sufficient to support a magistrate's disinterested determination
to issue a search warrant will justify the officer's in making
a search; without a warrant would reduce the Amendement to a nullity
and leave the peoples home secure only in the discretion of police
officers...When the right of privacy must reasonably yeild to
right of search, as a rule, to be decided by a judicial officer,
not by a policeman or government agent."Id.

    Petitioner asserts that the mere possibility that intrusion
on otherwise private activities is technologically feasible does
not strip citizens of their privacy rights;thus,absent exigent situations,
police must first receive a warrant to enter any area that is
off limits  to the general public Kyllo v. United States, 533
US 27, 150 L.Ed.2d 94, 98, 121 S.Ct.2038(2001) "While it maybe
difficult to refine the Katz test in some instances, in the case
of the search of a home's interior-the prototypical and hence
most commonly litigated area of protected privacy-there is a ready
criteron, with roots deep in the common law, of the minimal expectation
of privacy that exists and that is acknowledged to be reasonable.
To withdraw protection of this minimum expectation would be to

permit police technology to erode the privacy guaranteed by the
Fourth Amendment..."Id. see also Estate of Smith V. Marasco, 318
F.3d 497, 519(3rdCir.2003) "officers entered into the curtilage,
where (Smith) had a legitimate expectation of privacy.(Fourth
Amendment protections extend not only to a person's home but also
the curtilage surrounding the property); United States v. Zimmerman,
277 F.3d 426, 431(3rd Cir.2002)"One's house is sacrosanct, and
unreasonable government intrusion into the home is the chief evil
which the wording of the Fourth Amendment is directed (quoting Payton
v. New York, 455 US 573, 585(1980); United States v. Dunn, 480 U.S.
294(1987) "the curtilage, which is defined as the area immediately
surrounding a residence that habors the intimate activity associated
with sanctity of a man's house and the privacies of life which warrants
the Fourth Amendment protections that attach to  a home." quoting
Oliver v. United States, 466 U.S. 170, 183(1984)

   The makers of our Constitution conferred, as against the government
the right to be left alone-the most comprehensible of rights and
the right most valued by civiled men. To protect that right, ever
unjustifiable intrusion by the government upon the privacy of the
individual, whatever means employed, must be deemed a violation
of the Fourth Amendment. And the use, as evidence in a criminal
proceeding of facts ascertained by such intrusion must be deemed
a violation of the Fourth Amendment. Ex-parte Jackson, 96 US 727,
24 L.Ed 877(1877)

   Petitioner explained within the §2255 Supplemental brief and
within the 59(e) Motion to Alter or Amend Judgement that "the government
agents were required to receive judicial authroizationbefore comme-
ncing to install the electronic tracking device, but completely ignored

the procedure of antecedent justification, which is central to the Fourth Amendment. A procedure which has been held to be a Constitutional precondition."(see Supplemental Attachment in support of §2255 motion, pg4, filed May 12, 2003); and further explained "that a duly authorized magistrate; properly notified of the need of such investigation; specifically informed of the basis on which it is to proceed, and clearly apprised of the precise intrusion could constitutionally authorize such a warrant with appropriate safeguards." (see Motion to Alter and Amend Judgement pursuant to 59(a) and (e) of the F.R.Crim.P,pg2-3, filed April 11, 2006).

Petitioner asserts that the primary reason for the warrant requirement is to interpose a neutral and detached magistrate between the citizen and the officer, thus requiring a warrant will have the salutory effect of ensuring that the use of tracking devices are not abused; **by** imposing upon the agents the requirement that they demonstrate in advance their **justification for** the tracking device; by describing the object into which the device is to be placed, the circumstance that led agents to wish to install the device, and the length of time for which electronic surveillance is requested. Id at 717-18. In fact Congress enacted 18 U.S.C.§3117 in 1986 for this exact purpose. To this extent Congress expected law enforcement and agents to obtain court warrants before installing and monitoring tracking devices. The Senate, in its report,observed:

> "This new code section provides that if a court is
> empowered to issue a warrant or other order for the
> installation of a mobile tracking device, and the
> tracking of the object or person on which the device
> is installed, such warrant remains valid even if the
> device is moved outside the jurisdiction of the court;

21

                    even outside the jurisdiction of the United States,
                    provided that the device was installed within
                    the jurisdiction of the court, in coformity with
                    the court order. This clarification does not
                    effect [sic] current legal standards for the issuance
                    of such an order.
          S.Rep.99-541 (October 17, 1986) at 33-34; 1986 U.S.C.C.A.N.
          3555, 3587-88(emphasis is added).

     It is clear that congress intended for law enforcement to

obtain a warrant before using electronic tracking devices, thus

the government may not, on nothing more than its say so, surreptitiously

apply a tracking device to an individuals private property.

     In sum, the evidence that was seized from the property of

the petitioner was a direct product and in relevant connection

with the unlawful installation and monitoring of the tracking device

placed on petitioners vehicle. Given this intrusion upon private

premises in violation of petitioner's reasonable expectation of

privacy; where no probable cause and no warrant existed for such

an intrusion violative of the great principles incoporated in our

"Bill of Rights"; that every individual living under our Constitution

is protected against arbitrary intrusion by government upon the

privacy of his person or the sanctity of his property, suppression

of the evidence is required. United States v. Roberson, 90 F.3d

75, (3rd. Cir. 1996) see also Wong Sun v. United States, 371 U.S.471,

484, 83 S.Ct.407, 9L.Ed2d 441(1963) "Evidence seized in violation

of the Fourth Amendment will be suppressed as fruit of a poisonous

tree" because unlawfully acquired evidence can never be justified

by its fruit."Id.

     In this case, it was only the tracking device that enabled the

agents to discover petitioner's location,without its aid the agents

                                    22

would have never been directed to Christiana Medows Apartment Complex, would not have discovered the evidence used to convict the petitioner and would not been in position to arrest petitioner. United States v. Bergdoll, 412 F.Supp.1322, 1338 (1978); because it was through the tracking device alone that enabled the agents to learn the location of personal property not exposed to public view; it invaded an interest embraced in the Fourth Amendment. Id Karo, 734-36, "The impact of beeper surviellance upon interest protected by the Fourth Amendment leads me to what I regard as the perfectly sensible conclusion that absent exigent circumstances government agents have a constitutional duty to obtain a warrant before they install an electronic device on a private citizens property." Id.736..."The owner of property, of course, has a right to exlcude from it all the world, including the government,and an concomitant right to use it exclusively for his own purpose!"Id.729.

The government did  intrude into a constitutionally protected area of petitioner's home; an area in which society recognizes as reasonable and in which petitioner had a justifiable privacy interest; thus, due to the government's failure to acquire a warrrant and infringement upon petitioner's reasonable expectation of privacy; in violation of his Fourth Amendment right; this court should grant C.O.A. because a reasonable jurist would find it debatable whether petitioner's allegation of a Fourth Amendment violation states a valid claim of the denial of a Constitutional right. Moreover, a factfinder could conclude that this case was a Fourth Amendemnt violation.

(3) WAS PETITIONER'S CONVICTION AND SENTENCE IMPOSED

## IN VIOLATION OF HIS FIFTH AND SIXTH AMENDMENT RIGHT
## TO EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner has submitted within his §2255 habeas corpus motion, specific acts and omissions, identifying counsel's deficient performance, which was outside the range of professionally competent assistance; and has established that there is a reasonable probability that counsel's deficient performance caused the lost of a substantive or procedural right.

In petitioner's motion he raised the following claims:

A) IF COUNSEL HAD CONDUCTED DISCOVERY AND EVIDENCE IN QUESTION WOULD HAVE BEEN SUPPRESSED, THERE IS REASONABLE PROBABILITY THAT THE RESULT WOULD HAVE BEEN DIFFERENT.

B) COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION TO SUPPRESS STATEMENTS MADE BY DEFENDANT BEFORE TRIAL.

C) COUNSEL WAS INEFFECTIVE FOR FAILING TO HAVE THE NEW INDICTMENT DISMISSED, WHICH WAS BROADENED AND SUBSTANTIALLY AMENDED BY THE GOVERNMENT AFTER THE LIMITATION PERIOD.

D) COUNSEL WAS INEFFECTIVE IN FAILING TO APPEAL THE GOVERNMENT'S ELICITING OF EXPERT TESTIMONY CONCERNING THE DEFENDANT'S MENTAL STATE, WHICH VIOLATES RULE 704(b) PRECLUDING EXPERT TESTIMONY WITH RESPECT TO WHETHER DEFENDENT HAD MENTAL STATE CONSTITUTING ELEMENT OF THE CRIME CHARGED.

E) COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE DISTRICT COURT'S VIOLATION OF APPRENDI, WHEN IT ALONE DETERMINED THE QUANTITY OF DRUGS BY A PREPONDERANCE OF THE EVIDENCE AT THE SENTENCING PHASE.

F) COUNSEL'S FAILURE TO CONDUCT DISCOVERY COMBINED WITH HIS FAILURE TO INVESTIGATE MADE HIM UNAWARE THAT THE GOVERNMENT USED ELECTRONIC SURVEILLANCE WITHOUT FIRST RECEIVING PROPER AUTHORIZATION.

(see Habeas Corpus §2255 motion and Supplemental Attachment in Support of Petition To Vacate Conviction and Sentence.)

Petitioner asserts that the right to effective assistance of counsel is the most fundamental of rights because counsel's skill and knowledge is necessary to accord the defendant an ample opportunity to meet the case of the prosecution. <u>Strickland v. Washington</u>, 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The guarantee of effective assistance of counsel is not valued for its own sake but "because of the effect it has on the ability of the accused to receive a fair trial." <u>United States v. Cronic</u>, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657(1984).

The right to counsel attaches upon "the initiation of adversary proceedings" against the defendant, and thereafter, the right applies to all "critical stages" of the prosecution. <u>United States v. Gouveia</u>,  467 U.S. 180, 189, 104 S.Ct.2292, 2298, 81 L.Ed.2d 146(1984). The right covers pretrial investigation, <u>United States v. Gray</u>, 878 F.2d.702(3rd Cir.1989); the decision whether to plead guilty or stand trial, <u>United States v. Day</u>, 969 F.2d 39 (3rd Cir.1992); jury trial, <u>Berryman v. Morton</u>, 100 F.3d 1089 (3rd Cir. 1996); sentencing, <u>United States v. Headley</u>, 923 F2d 1079, 1084 (3rd Cir. 1990); and direct appeal, <u>United States v. Mannino</u>, 212 F.3d 835(3rd Cir.2000).

<u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674 (1984) established two avenues for a claim of ineffective assistance counsel.

First, <u>Strickland</u> noted that a defendant may be denied the Sixth Amendment right to effective assistance when counsel fails to render "adequate legal assistance." Claims of this type are

called "actual ineffectiveness claims" and an overabundance of case law exists exploring its boundaries. Strickland, 466 U.S. at 686, 104 S.Ct. at 2063-2064. The benchmark for determining effective assistance is whether the attorney's performance was outside the range of professionally competent assistance and, if so, whether there is a reasonable probability the deficient performance caused the loss of a substantive or procedural right. See also: William v. Taylor, 529 U.S. 362, 393, 120 S.Ct.1495, 146 L.Ed.2d 389 (2000).

A "reasonable probability" is a standard less demanding than the preponderance of the evidence standard. Hull v. Kyler, 190 F3d 88, 110 (3rd Cir.1999)(prejudice is a reasonable probability sufficient to undermine confidence in the outcome, and this stand-ard is less demanding than the preponderance standard). Strickland, 466 U.S. at 693-94, 104 S.Ct. at 2052 " A reasonable probability is a probability sufficient to undermine confidence in the outcome; however, it is a less demanding standard than "more likely than not."

Mask v. McGinnis, 233 F3d 132, 139 (2d Cir.2000) defines "reasonable probability" as follows:

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a prepond-erance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature', and 'mutually opposed' to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate 'a reasonable probability that... the result of the proceeding would have been different.'

26

Second, a defendant may be deprived of the right to effective assistance of counsel if the government "interferes in certain ways with the ability of counsel to make independant decisions about how to conduct the defense." Id Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct.2052, 80 L.Ed.2d 674(1984). In situations of government interference, the defendant is not required to prove prejudice. Strickland, 466 U.S. at 692, 104 S.Ct. at 6067.

In the instant case petitioner is not required to prove prejudice due to the government's interference with counsel's ability to make an independant decision about how to conduct the defense. When the government knowingly withheld exculpatory evidence, which the prosecution is required to turn over; prejudice is proved because there is a reasonable probability that the suppressed evidence would have affected the outcome. Despite counsel's failure to file a motion for discovery, the prosecution has a Constitutional obligation to communicate all revelant information to counsel. Giglio v. United States, 405 U.S. 150(1972).

### (4) COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIAGE AND PROPERLY PREPARE FOR TRIAL.

Petitoner first notes that the American Bas Association Standard For Criminal Justice, which was excepted by the Strickland Court as a proper guide for determining what is reasonable conduct; requires counsel to "conduct a prompt investigation of the circumstances of the case and to explore all the avenues leading to facts relevant to the merits of the case...(ABA Standards For Criminal Justice/Justice Standard 4-4-1)(2dEd.1980 & Supp.1986); see also Wiggins v. Smith, 539 U.S. 510 at 524, 156 L.Ed.471, 123 S.Ct. 2527(2003).

The court stated that ABA Standards are "guides to determining what is reasonable"... Counsel failure to examine public records fell below professional norms. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. ID.(1ABA Standards for Criminal Justice 4-4.1)(2d.Ed.1982 Supp.);United States v. Gray, 878 F.2d 702(3rd Cir.1989).

In the instant case the court erred when it denied petitioner relief on the basis of presumption; that counsel's conduct fell within the wide range of reasonable professional assistance. The objective facts demonstrate that the court not only failed to give sufficient weight to certain pieces of compelling evidence, but totally disregarded the fact that counsel's deficiency in failing to learn of the governments use of electronic surveillance in its apprehension of petitioner; deprived him of a fair trial.

Petitioner asserts that it is simply unacceptable for an attorney who represents a client for over a year, who is charged with a serious felony; to fail to inquire whether he has received the complete discovery. It is the basic tenet of criminal representation for counsel to find out whether the complete discovery was turned over; and failure to do so is particular egregious when considered in with the back drop that the case had been pending for over a year. The record supports the fact that counsel's failure to learn of and timely discover these facts, constituted a gross deviation from reasonable professional standards and such failure in the absence of a reasonable explanation is hard to reconcile

28

with a defendant's Constitutional right to effective assistance
of counsel.

In addition to this act of ineffectiveness, counsel failed
to file a motion to suppress the evidence as well as the statements
made before trial.

The warrantless search of petitioner's satchel which was
no longer in his possession or accessible to him, was not justified
by exigent circumstances because he was handcuffed and in the
presence of several agents, all who had thier guns drawn. United
States v. Myers, 308 F.3d 251, 274(3rd Cir.2004)"even if the
arrest was valid, the opening of the bag would still be unconstitutional
with the defendant immobilized and in handcuffs, it cannot be
said he has access to the bag, as required for a valid search
incident to arrest under Chimel v. California, 395 U.S.752,
23 L.Ed 2d 685, 89 S.Ct.2034(1969)".Id.

It appears that the agents recollection of what transpired
on the morning of October 15, 1998 differs in its entirety from
what petitioner recalls. The government has stated within its
initial response to petitioners §2255 motion that "The trial
record demonstrates SFO Sullivan arrested Clemons and searched
the satchel Clemons' was carrying directly following Clemons
arrest and handcuffing on the ground and SFO Sullivan's seizure
of the satchel at the scene of Clemon's arrest-**the parking lot
of the apartment complex**."(see Answer of the United States of
America Respondent, pg.22, filed May 16, 2003).Petitioner's
recollection is completely different except for one aspect.
"At the scene of the arrest ( **the parking lot of the Christiana
Medows Apartment Complex**) the bag was placed on the ground and

29

the defendant was handcuffed and placed under arrest, he was
then taken along with the bag inside of a vacant apartment under-
neath of his residence and questioned while Det.Sullivan commenced
to go through the bag."(see Memorandum of Law in Support of petitioner's
§2255, pg.12,filed March 10, 2003).

Notwithstanding the differing of accounts, counsel failure
to conduct discovery combined with the likelihood of success
of a suppression motion had it been timely filed, petitioner
was deprived of effective assistance of counsel.

The one account that the petitioner and the government
agrees upon is the scene of the arrest,which happens  to be **"the
parking lot of Christiana Meadows Apartment Complex."** The arrest
warrant for the petitioner and the search warrant for his apartment,
as well as the resulting seizure, were tainted fruit of an unauthor-
ized installation and monitoring of an electronic tracking device.
see United States v. Karo, 468 U.S.705, 82 L.Ed.2d 530, 104 S.Ct.
3296; "The information was obtained without a warrant and would
therefore be inadmissible at trial against those with privacy
interest...That information which was included in the warrant
affidavit, would also invalidate the warrant for the search of
the house..."Id 468 US 719. Thus, the search-incident to arrest
exception to the Fourth Amendment's warrant requirement is now
nullified because of the government's prior illegal installation
and monitoring of the tracking device.

In like manner, petitioner's statements before trial was
also the tainted fruit of illegal electronic surveillance and
had consel realized through discovery that they were obtained
illegally, he could have moved to have them suppressed.

Ineffectiveness is generally in the context of complete failure to investigate because counsel can hardly be said to have made a strategic choice against pursing a certain line of investigation when he/she has not obtained the facts on which such a decision could be made. Strickland 466 U.S. 690-91, 104 S.Ct.2052 at 2065-67, 80 L.Ed.2d 674(1984); see also United States v. Gray, 878 F.2d 702, 711 (3rd Cir.1989).

Petitioner asserts, that counsel unreasonably failed to investigate the circumstances of the confession and unreasonably failed to file a motion to suppress those statements. The confession was admitted as evidence during the sentencing phase to enhance petitioner's sentence, without the court ever being called upon to address the legality of the confession, or to conduct an inquiry into the factors leading up to the confession; so as to render the confession reliable and hence admissable.

The Supreme Court ruled years ago that an accused may not be convicted on his own uncorroborated confession. There must be sufficient independent evidence to corroborate defendant's confession and to prove the Corpus delicti. Smith v. United States, 348 U.S. 147, 152, 75 S.Ct.194, 197, 99 L.Ed.192(1954).

Had counsel diligently discovered the existing exculpatory evidence and filed a motion to supress the evidence and statements; there exist a reasonable probability that the outcome would have been different. The Supreme Court has expressly stated: "Even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt." United States v.

31

Cronic, 466 U.S. 648,-n19, 104 S.Ct.2039, 2045-46 n.19, 80 L.Ed.2d
657, 666 n.19(1984).

Petitioner asserts, that once he opted to go to trial; it
was unrational for counsel to abandon the suppression hearing
which was clear cut and could have reasonably prevented petitioner
from being convicted.

In sum, counsel was ineffective for failing to properly investigate
and prepare for trial; moreover for his failure to exploit several
Fourth Amendment violations which had the probability, if challenged,
to acquit petitioner of the charged offense.

(5) COUNSEL WAS INEFFECTIVE FOR FAILING TO HAVE THE
NEW INDICTMENT DISMISSED, WHICH WAS IN VIOLATION
OF THE SPEEDY TRIAL ACT; SPECIFICALLY THE SPEEDY
INDICTMENT REQUIREMENT.

Petitioner asserts that counsel was ineffective for failing
to have the second indictment dismissed due to the violation
of the speedy indictment requirement, which falls under the
Speedy Trial Act, 18 U.S.C.S.§3161. 18 U.S.C.S. 3161(b) functions
independently and established a deadline seperate from the
Speedy Trial Act's, specifically 18 U.S.C.S. 3161(c), additional
requirement that a defendant must be brought to trial within
seventy days after the filing and making public of the information
or indictment. The Speedy Trial Act States, inter alia, "any
information or indictment charging an individual with the commission
of an offense shall be filed within thirty days from the date
on which such individual was arrested or served with a summons
in connection with such charges ." 18 U.S.C.§3161(b)(1994
Supp.2003). Any indictment violating the provision offends

32

the Sixth Amendment right to a speedy trial on which the Speedy
Trial Act is based, and must be dismissed. United States v.
Rivers Const.Co., 863F.2d 293, 295 (3d Cir.1988)

In the instant case the first indictment was filed two
days before petitioner was arrested. However, the second indictment
was issued almost thirteen months after petitioner's arrest.In
addition to this, the second indictment preceded the dismissal of
the first indictment.

The first indictment which was returned on October 13,
1998; two days before petitioner's arrest; charged petitioner
with two counts of knowingly distributing a mixture of cocaine
base in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A). The second
indictment which derived from evidence seized at the scene
of the arrest on Octber 15, 1998, in which the agents executed
an arrest warrant. The second indictment charged the petitioner
with one count of possession with the intent to distribute
cocine base a/k/a"crack", in violation of 21 U.S.C. 841(a)(1)
and (b)(1)(A); and count two charged that defendant did knowingly
carry a firearm during and in relation to a drug trafficking
crime, in violation of Title 18 U.S.C.§924(c)(1). The events
in the indictment occurred on October 15, 1998; however the
indictment was returned on November 23, 1999.

Pursuant to 18 U.S.C.§3161(b) "[a]ny information or indictment
charging an individual with the commission of an offense shall
be filed within thirty days of the date on which such individual
was arrested...in connection with such charges.Id. The second
indictment in the present case was initially a "felony"information"
(see Kent A. Jordans' "Memorandum Opinion"pg.15 filed March

28, 2006), which only became an indictment once petitioner discovered the cause of his attorney' death and withdrew his guilty plea. Thirteen months after this discovery, the original indictment had not been dismissed, yet the government indicted petitioner on the felony information.

Petitioner asserts that prosecutorial mis-management not only implicates the rights of a defendant, but also trangresses the boundaries of fair play and jeopardizes the proper functioning of the judicial system. The government could have taken the petitioner to trial on the valid indictment or attempted to supersede the initial indictment with the additional evidence seized from the arrest. However, the government failed to do so and chose to proceed to trial on an indictment that exceeded the thirty-day time period of the Speedy Indictment requirement; which would have been dismissed had counsel been competent enough to recognize that such a violation occurred. It would be contrary to common sense that counsel was effective in his representation of petitioner when he failed to recognize such a clear warning as to what was transpiring. In most cases the initial indictment would have been dismissed to make room for the second indictment, but in the present case, the first indictment was not dismissed until well after petitioner lost trial. The only purpose for this maneuver was to use the first indictment as a safety net just in case the second indictment was challenged and dismissed.

It would also be contrary to common sense to deem inconsequential the additional facts that created the possibility of a much much

more severe sanction which did not exist in the first indictment.
Not only was count 2 of the second indictment changed to possession
of a firearm, which runs consecutive to any drug count, if
found guilty; but the type of drug was changed from cocaine
base to crack cocaine which is commonly not sentenced as powder
cocaine when the terminology "crack" is incorporated in the
indictment, which is sentenced at a ratio of 100 to 1.
The government could have taken the petitioner to trial on
the initial indictment but rather chose to be vindictive in
its prosecution by enhancing the penalties in the second indictment;
due to petitioner acting on his Constitutional rights to withdraw
his plea.

   In sum, not only did the government usurp petitioner's
fundamental rights, but also the judicial process upon which
the sense of fairness is based. A court should expect nothing
less than strict compliance with the Federal rules that have
been established to help ensure that a criminal defendant is
not  unduly prejudiced. The prosecution did not procure a timely
second indictment as is required by the Speedy Indictment require-
ment. The indictment was filed almost a year outside the requisite
time period and not due to simple negligence, but prosecutorial
misconduct; which was designed to gain an unfair prosecutional
advantage (the exemption of having to call and reveal an unreliable
informant) and send a message to petitioner for withdrawing
the plea.

   Petitioner has cited numerous Supreme Court case law on
the showing of prejudice required to establish ineffective

35

assistance of counsel in violation of his Sixth amendment right;
however will reiterate that a determination whether a defendant
was prejudiced by counsel's failure to assert a law or ruling
that could have benefitted the defendant at the time, depends
upon whether counsel's deficient performance deprived the defendant
of a substantive or procedural right to which the law entitled
him. <u>Williams v. Taylor</u>, 529 U.S. 362(2000). There is no doubt
that counsel rendered deficient performance and that, but for
that deficiency, the petitioner would have not been tried on
the second indictment. Thus, prejudice has been proved; moreover
petitioner has established that there is a reasonable probability
that but for the incompetence of counsel the outcome would
have been different. <u>United States v. Day</u>, 969 F.2d 39, 43(3d.Cir.1992)
"must establish that there is a reasonable probability that,
but for the incompetence of counsel...the outcome would have
been different."Id.

This court should grant C.O.A. on petitioner' claim  because
a reasonable jurist would find it debatable whether petitioner's
allegation of a Sixth Amendment right to effective assistance
of counsel, states a valid claim of the denial of a Constitutional
right.


(6)COUNSEL WAS INEFFECTIVE FOR FAILING TO APPEAL THE GOVERNMENT'S
ELICITING OF EXPERT TESTIMONY, (WHICH WAS OBJECTED TO AT TRIAL)
<u>CONCERNING DEFENDANT'S MENTAL STATE.</u>

Petitioner asserts that counsel was ineffective for failing
to pursue the government's violation of Rule 704(b) of Fed.R.

Evidence, which states:

> " No expert witness testifying with respect to the
> mental state or condition of a defendant in a
> criminal case may state a opinion or inference
> as to whether the defendant did or did not have
> the mental state or condition constituting an
> element of the crime charged or a defense thereto,
> such ultimate issues are matters for the trier
> of fact."Id.

In the instant case the government clearly violated Rule
704(b), when the prosecution deliberately elicited testimony
that went well beyond what is permissible under Rule 704(b).
The questions in which the prosecution presented were plainly
designed to elicit the expert's testimony about the mental state
(possessed a specific Intent) of the defendant.

The testimony at issue consisted of the following questions
and answers in the government's direct and redirect examination
of Det.Sullivan:

### Direct

Q.  On October 15 th, 1998 would 250 gr. or approximately
    9 ounces of crack cocaine base be an amount normally
    carried by somebody who was a user or distributor.

A.  There's only one answer to that and thats for distribution.

### RE-DIRECT

Q.  250 grams of "crack" cocaine base would be approximately
    9 ounces? Is that right?

A.  Yes

Q.  Approximately 9 ounces of "crack" cocaine base. Did
    anything Mr.Malik ask you in cross-examination change
    your conclusion, your opinion, that 250 grams of crack
    cocaine is indicative of distribution as opposed to
    personal use?

A.    There's only one explanation for that amount of weight,
and that is strictly for distribution. I've never
seen it on a user or a junkie or whatever you want
to call an individaulwho has a bad "crack" habit.

Q.    Is your opinion that the possession of a loaded gun
near 250 grams of "crack" cocaine base is indicative
of distribution as opposed to personal use?

A.    It's very indicative of someone involved in distribution.

(see pg 34 of Petitioner, §2255 motion, filed March 10, 2003)

Contrary to Judge Jordan's assertion that "These excerpt's demonstrate

that the prosecutor did not ask Sullivan to opine on Clemon's

intent with respect to the drugs he possessed; rather the proseuction

asked whether the quantity of drugs, as well as the possession

of a gun along with that quantity, indicated distribution or

personal use." (see Judge Jordan Memorandum and Opinion, pg 28,

filed March 28, 2006); absent judge Jordan's word semantics,   there

is no doubt that the presecution's framing of the questions   clearly

elicited responses that drew inferences regarding the petitioner's

intent. Counsel objected to this line of testimony when he reiterated

the following :

> **Defense Counsel:** Your Honor, just for the record, same
> objection I had asserted before-that the question is
> beyond scope of the detective expertise and no notification
> of this inadvance of trial.

(see pg36 of petitioner's §2255 motion filed March 10, 2003)

The court overruledcounsel's objection, however it was properly

preserved for Appellate review; thus, there was no strategic or

tactical justification for counsel's failure to pursue such an

issue of obvious merit. In addition, the Third Circuit had just

ruled in favor of a defendant, who's case was identical to the

petitioner's in United States v. Watson, 260 F.3d 301(3rd Cir,2001)

In Watson, the court ruled that the officer essentially testified that, "in his opinion, Watson 'possess[ed] with the intent to distribute to someone else." Id.at309. Additionally, the court found that the prosecutor's repeated reference to Watson's intent made the necessary inference from the officers' response that Watson possessed the "crack" cocaine, intending to distribute it and, thus, Rule 704(b) was violated.Id.

In the instant case, the prosecution's question were almost identical to that in Watson. The answers, however "That its for distribution...its strickly for distribute...its very indicative of someone involved in distrbution", pointed much more directly to the mental state (possessed a specific intent) of someone in possession of 250 grams, namely the petitioner. The unmistakable import of Det.Sullivan's opinion testimony was that the defendant intended to distribute the drugs opposed to using them; precisely what Rule 704(b) prohibits.

It should be noted that the testimony of Det.Sullivan which was admitted by the trial court was the only evidence offered to support the **'intent to ditribute charge'**. Absent his testimony there was insufficient evidence to support the finding that the petitioner intended to distribute the drugs. In turn the government used this testimony to prove that petitioner's intent was to distribute the drugs.

Under the rule precluding expert testimony with respect to whether a defendant had the mental state constituting an element of the crime charged, expert testimony is admissable if it merely supports an inference or conclusion that the defendant did or

39

did not have the requisite mens rea, so long as the expert does
not draw  the ultimate inference or conclusion for the jury. However,
there is a fine line that expert witnesses may not cross. It is
well established that experts may describe, in general and factual
terms, the common practices of drug dealers. see United States
v. Boyd, 55 F.3d 667, 671 (D.C.Cir.1995).

Petitioner asserts that the prosecution's repeated invocation
of the word's **"Use and Distribution** framed Det.Sullivan's expert
testimony in such a way that the only inference that could be
drawn from the responses were, that petitioner possessed the drugs
with the intent to distribute them. Moreover, the prosecution's
eliciting of testimony on the ultimate issue of fact misled the
jury into affording unwarranted credibility to the witness' testimony.
The responses of Det.Sullivan ("That its for distribution...its
strickly for distribution...its very indicative of someone involved
in distribution.") clearly strayed from applying expert methodology,
to making sweeping conclusions about petitioner's intent.

In the government's initial response, it was asserted that
"the Watson case was decided after Clemons' trial so that the
Watson decision would not have been available to Clemons' counsel
at the time of the Clemons' trial." see Governmental Response,
pg.33, filed May 16, 2003.

The government is correct that Watson was decided after petitioner's
trial, however this statement is irrelevant since counsel had
already made his objection during the trial, as to the expert
testimony; and who's position was only fortified all the more
with the Watson decision. Petitioner's direct appeal was decided
on February 5, 2002; the Watson decision was made six months prior

to petitioner's ; this it is evident that counsel had ample time
to apply this argument to petitioner's direct appeal but found
it to be more convenient to file an Anders brief; asserting that
there was no  nonfrivolous issues.

At best, the government's defense for counsel's nonperformance
falls well short of what a defendant is constitutionally entitled
to under the Sixth Amendment. see Evitts v. Lucey, 469 U.S.387,
83 L.Ed.2d 821, 105 S.Ct.830(1985). In Evitts, the Supreme Court
held that:

> "[i]n bringing an appeal as of right from his conviction,
> a criminal defendant is attempting to demonstrate that
> the conviction, with its consequent drastic loss of
> liberty, is unlawful. To prosecute the appeal, a criminal
> appellant must face an adversary proceeding that--like
> a trial--is governed by intricate rules that to a layperson
> would be hopelessly forbidding. An unrepresented appellant--
> like an unrepresented defendant at trial--is unable to
> protect the vital interests at stakes...[N]ominal repres-
> entation at trial--does not suffice to render the pro-
> ceedings constitutionally adequate; a party whose counsel
> is unable to provide effective representation is in
> no better position than one who has no counsel at all."
> Id.at 396

In sum, counsel was ineffective in his failure to raise such
a viable issue on appeal, one that was objected to at trial and
preserved for appeal. The main purpose for an objection, if overruled
is for de novo review. Despite counsel's knowledge of this fact
he completely ignored its existence by his failure to introduce
this issue of merit. **There was no evidence in the record and**
the government failed to introduce any evidence to demonstrate
the petitioner possessed the drugs with the intent to distribute.
Apart from Det.Sullivan expert testimony,the evidence presented
by the government was insufficient to sustain a conviction for

41

possession with intent to distribute.The testimony on the ultimate issue of fact should have been excluded due to Rule 704(b); for the ultimate issue of fact is for the jury alone to decide. Watson Id. at 309.

The court should grant C.O.A. on petitoiner's claim, because a reasonable jurist would find it debatable whether petitioner's allegation of a Sixth Amendment violation states a valid claim of a Constitutional right.

(7)  COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE DISTRICT COURT'S VIOLATION OF APPRENDI WHEN IT ALONE DETERMINED THE QUANTITY OF DRUGS BY A PREPONDERANCE OF THE EVIDENCE.

Petitioner asserts that counsel was ineffective for failing to appeal the court's violation of Apprendi v. New Jersey,530 U.S. 466(2000); when the judge alone made the final determination as to the quantity of drugs; by the standard of "preponderance of evidence." Though petitioner objected to the judge's determination of quantity and preserved it for Appellate review,counsel found it be more fitting to file an Anders brief instead of effectively submitting the present issue of merit.

In the instant  case the indictment charged petitioner with violating 841(a)(1), by possessing cocaine base a/k/a "Crack" with the intent to distribute, but did not specify the amount of drugs involved; the jury was not asked to make a specific finding as to quantity and, thus, when the jury returned its verdict of guilty, it was as the indictment was presented.

At sentencing the judge relied on the Probation Officer's Presentence Report, and sentenced the petitioner to twenty years on count 1, based upon his determination that the petitioner should be held responsible for 15 kilograms of cocaine powder and 500grams of "crack".(see §2255 motion pg.38, filed March 10, 2003) Petitioner objected on the grounds; that the judge's finding of facts violated his Sixth Amendment right to a jury trial as interpreted in Apprendi.

The Supreme Court announced in Apprendi v. New Jersey, that any fact, other than a prior conviction, that increases a sentence beyond the "statutory Maximum" is treated as an offense element; subject to the Sixth Amendment right to a jury trial. Now in light of further development in laws governing judge's sentencing authority, the Supreme Court has clarified in Blakely v. Washington, 542 U.S. 296(2004), the meaning of "statutory maximum", which means "the maximum sentence a judge may impose soley on the basis of the facts relfected in the jury verdict or admitted by the defendant."Id.

The High Court went on to explain that "This rule reflects the two long-standing tenets of Common law criminal jurisprudence: that 'the truth of every accusation' against a defendant 'should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbor,'...and that 'an accusation which lack any particular fact which the law makes essential to the punishment is...no accusation within the requirements of common law, and it is no accusations in reasons.Id.4. These principles have been

acknowledged by courts and treatises since the earliest day of grad-
uated sentencing...[FN6].

The government has asserts and relied upon the Third Circuit's
decision in United States v. Parmelee, 319 F.3d 583(2003), to
justify its position, " as verifying the correctness of the rule
that there is no Apprendi error when the facts that are not charged
in the indictment and proven to the jury are used at sentencing
so long as the defendant's sentence does not exceed the maximum
penalty for the facts proven to the jury.(see Government's Answer,
pgs.38-39, filed May 16, 2003).
Petitioner asserts that the government's position is antiquated
and no longer valid; though it was once believed that Apprendi
stood only for sentences that exceeded the offenses statutory maximum,
and that if a defendant's sentence falls within the so called
statutory maximum,then no Apprendi error occurs. However, Apprendi,
now  broadened by the Supreme Court's decision in Blakely, declares
this way of thinking no longer possible; because it is the jury
who must make this decision not the judge.

The High Court further held that "the statutory maximum for
Apprendi purposes is the maximum sentence a judge may impose soley
on the basis of facts reflected in the jury's verdict or admitted
by the defendant..." In other words, the relevant 'statutory maximum'
is not the maximum sentence a judge may impose after finding additional
facts, but the maximum he may impose without any additional findings.
When a  judge inflicts punishment that jury's verdict alone does
not allow, the jury  has not found all the facts "which the law
makes essential to punishment..." and the judges exceeds his proper

44

authority.Id.at *4. In other words, the jury must find the facts
(quantity) that expose a defendant to a greater punishment than
that authorized by the finding of guilt; and when the jury fails
to do so and a defendant is sentenced (as in the case) to a greater
sentence than the jury's verdict would allow; he has been deprived
of his Sixth Amendment right and in actuality is being sentenced
for a greater crime than the jury found him guilty of.

In judge Jordan's denial of petitioner's §2255 motion, he relied
on the government's position in <u>United State v. Parmelee</u>, 319 F.3d
583(3rd Cir.2003)&further iterated "Because count 1 of the November
1999 Indictment did not allege, and the jury was not instructed
to determine a quantity of drugs, Clemons had to be sentenced
under the "Catch-all" provision of 21 U.S.C.§841(b)(1)(c). Pursuant
to 21 U.S.C. 841(b)(1)(c), the statutory maximum sentence applicable
to unspecified amounts of controlled substances is twenty years(240
months) of imprisonment. Thus, even though the court did accept
the increased quantity of drugs listed in the pre-sentence report,
the court did not violate Apprendi because it still sentenced
Clemons within the permissble statutory maximum 20 year sentence
under 21 USC §841(b)(1)(c)..."(see Judge Jordan's "Memorandum
Opinion",pg.31, filed March 28, 2006).

Petitioner asserts that Judge Jordan is correct in one aspect,
that under (b)(1)(c) a defendant charged with possession of an
unspecified quantity of drugs is subject to a sentence of not
more than twenty years. However, he is incorrect when he concludes
that "even though the court did accept the increased quantity
of drugs listed in the pre-sentence report, the court did not

violate Apprendi because it still sentenced Clemons within the permissable statutory maximum 20 years sentence under 21 U.S.C. §841(b)(1)(c)..."

Petitioner's sentence would appear to be permissible, however, under the Sixth Amendment, as explained in Apprendi and clarified in Blakely, a judges authority derives wholly from the jury's verdict alone, not on additional factual findings as in the instant case. When judge McKelvie determined by a preponderance of the evidence, that petitioner was responsible for 15 Kilograms of cocaine powder and 500 grams of cocaine base a/k/a "crack"; and sentenced the petitioner to 20 years for such; he exceeded his proper authority and inflicted punishment that the jury's verdict alone did not allow; which the law makes essential to the punishment.

After considering the indictment and the jury's verdict sheet, there was no basis in the record for judge McKelvie's determination that petitioner was responsible for 15 kilograms of cocaine powder and 500 grams of cocaine base a/k/a "crack"; other than the presentence report by the probation officer. The High Court made it clear that "[W]e see no principled basis for differentiating between a waiver of the right to a jury trial on the elements of an offense and a waiver of the right to a jury determination of aggravating sentencing factors. Both rights arise from the same Sixth Amendment guarantee, and the Supreme Court has said that a fact used to enhance a sentence is the 'functional equivalent of an element of a greater offense' Apprendi, 530 U.S. at 494 n.19..." Thus, any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted

to a jury and proved beyond a reasonable doubt.

Apprendi and its progeny compels the court to focus on
the permissible sentence authorized by the jury verdict alone,
which in this case contained no factual finding as to quantity;
thus, judge McKelvie could not constitutionally increase petitioner's
sentence beyond that authorized for facts not reflected in the
jury's verdict.

Worthy of iteration is an opinion by Justice Scalia in
which he states "under the Sixth Amendment a judges authority
derives wholly from the jury's verdict, and to stray from that
principle would mean that a judge could sentence a defendant
for murder even if the jury convicted him only of illegally
possessing the firearm used to commit the murder.Id. The High
court went on to explain that it found it implausible that the
Framer's would have left definition of this scope up to judges.
Moreover, the pre-Apprendi landscape, without no warning in
either the indictment or plea; defendant's would routinely
see the maximum potential sentences balloon from as little as
five years to as much as life imprisonment, based not on facts
proved to the jury beyond a reasonable doubt, but on facts asserted
by a probation officer in a presentence report."

In sum, petitioner's twenty year sentence on count 1 was
based on facts that were neither found by a jury, nor properly
admitted by him; thus , it was a violation of petitioner's Sixth
Amendment Right; and counsel was ineffective for filing an Anders
brief instead of presenting this issue of obvious merit.

C.O.A. should be granted on this claim because a reasonable jurist would find it debatable whether petitioner's allegation of a Sixth Amendment violation of effective appellate counsel states a valid claim of the denial of a Constitutional right; as well as his right to have a jury make a factual finding as to the quantity (element) of drugs possessed.

(8)  SHOULD JUDGE GREGORY M. SLEET HAVE VOLUNTARILY RECUSED HIMSELF FROM PROCEEDING IN THE INSTANT CAUSE DUE TO POSSIBLE BIAS AND PREJUDICE.

Petitioner asserts, that judge Sleet should have voluntarily recused himself from the instant case due to possible bias and prejudice deriving from his inability to remain neutral and absolutely impartial.

On July 13, 2007 petitioner received a notice from the clerk's office indicating that the instant case had been reassigned to judge Gregory M. Sleet. Also on this same day petitioner received an Order from judge Sleet Denying his Rule 59(a) and (e) motion pursuant to the Fed.R. of Civil Procedure, which was dated July 12, 2007. On July 17, 2007, four days after receiving the Order and notice, petitioner received a letter from the assistant U.S. attorney Robert J. Prettyman informing him of the fact that judge Sleet was not the U.S. Attorney for the District of Delaware when the indictment was returned in the instant case, however, he was the U.S.Attorney for the District of Delaware while the case was under investigation.

Prior to the present case being assigned to judge Sleet; judge Kent A. Jordan presided over petitioner's habeas corpus

48

§2255 motion which is now being appealed. Simultaneously while judge Jordan was in the process of ruling on petitioner's §2255 motion several issues arose that caused petitioner to call into question judge Jordan's ability to remain neutral and absolutely impartial. Upon this discovery, petitioner filed a **"Motion To Disqualify Judge From Proceeding Further In Cause Due To Possible Bias and Prejudice."(Filed March 31, 2006, along with an "Affidavit of Prejudice in Support of Motion to Disqualify Judge." & "Certificate of Good Faith in Support of Motion to Disqualify.")** The motion to disqualify was made upon information and belief; stating facts and the basis for petitioner's belief; which may prevent or impede judge Jordan's impartial judgement. The statements set forth as a basis of petitioner's belief consisted of the following:

   (a) Judge Kent A. Jordan has a personal bias or prejudice towards movant or favoritism towards the government due to his duties in his former capacity as an assistant U.S. Attorney, in which he worked hand in hand in criminal investigation/prosecutions with AUSA Robert J. Prettyman in 1980's & 90's.

   (b) Judge Kent A. Jordan has a personal prejudice against movant because of hs professional respect for and friendship with John S. Malik,, esq., with whom he worked with during his tenure in private practice with Morris, James, Hitchens, and Williams.

   (c) Judge Kent A. Jordan has shown favoritism toward the government by denying movant the opportunity to rebut the government's amended brief, which was submitted and granted ----because of the their (government)failure to respond properly in the

49

initial brief.

(d) Judge Kent A. Jordan has shown a personal bais towards
    movant by his failure to promptly, efficiently,
    and fairly rule upon the habeas Corpus §2255 motion
    which was filed on March 10, 2003, and has now
    been pending for over three years; which in return
    has created a "stall tactic" for the government.

Petitioner respectfully asserts in this motion as he did
in the previous motion to disqualify; that judge Gregory M. Sleet
should  have voluntarily recused himself from participating
in the instant proceedings, pursuant to  28 U.S.C.§144 & 455,
and the corresponding **Canan 1, 2, & 3 of the Code of Conduct
for United States Judges**; each of which require federal judges
to disqualify themselves in any proceeding in which [their] impartial-
ity might be questioned.

Petitioner avers, that a motion to disqualify is a serious
undertaking, questioning the integrity and morals of the court,
as well as the reputation and professionalism of the judge; and
should not be made lightly or frivolously. Therefore, with utmost
deliberation petitioner carefully and accurately, present the
followoing fact and statement, in which he believes establishes
against the likelihood that he could obtain a fair and impartial
decision on the present motion for Certificate of Appealability
or on the Rule 59(a) and (e) motion which has already beeen denied
by said judge. The following statement set forth has been made
upon information and belief:

(A) Prior to Judge Gregory M. SLeet's ascendancy to
    the bench, he operated in the capacity of the United

50

States Attorney for the District of Delaware; super-
vising and excercising charge and direction of pro-
secutions within said District.While petitioner's
case was under investigation judge Sleet exercised
authority directly or indirectly over intimate matters
and details concerning the instant case; thus possessed
personal knowledge of disputed evidentiary facts
concerning the proceedings.

Petitioner does not allege that judge Sleet has exhibited

any actual bias or prejudice towards him; nor does he suggest

that he intentionally violated 28 U.S.C. §§144, 455, or the Code

of Conduct for United States Judges; and asserts only that under

the circumstances, judge Sleet's impartiality might reasonably

be questioned, and to avoid the appearance of impartiality it

would be best for all parties if he voluntarily recuse himself.

Petitioner has not relied on conjecture, speculation, or

opinion, but based his position on fact; as is required. (see United

v. Vespe 868 F.2d 1328, 1340(3rd Cir.1989); facts from which a

sane and reasonable mind may fairly infer the possibility of bias

and prejudice. (see Berger v. United, supra 255 U.S.22, 33-34,

65 L.Ed 481, 41 S.Ct.230(1921) "The issue is ultimately whether

the  facts stated...give fair support to the charge of a bent

of mind that may prevent or impede impartiality of judgement."Id.

It is evident that this issue is of relevant matter and poses

the potential possibility of the appearance of bias and prejudice;

had it not AUSA Prettyman would have never liberally volunteered

to disclose this information. Thus, the court can gather that

petitioner's concern is not comprised of either irrelevant matters

or mere conclusory assertions and allegations.

Petitioner asserts  that this claim of disqualification was raised at the earliest possible moment as is described in the Third Circuit's Smith v. Danya, 585 F.2d 83, 86 (3d Cir.1978); (see also  United States v. Furst 886 F.2d 558, 581,n.30(3d Cir.1989) "described this requirement as one of reasonable dilligence."Id.)

Though it is particularly troubling,in understanding how the transaction of the assignment of the case to judge Sleet was docketed on July 13, 2007, yet his Order denying petitioner's Rule 59(a) and (e) motion was dated July 12, 2007. In addition, AUSA Prettyman received notice that the case had been reassigned on July 13, 2007 as well.

One can presume that this is the earliest opporunity to raise this claim due to the fact that petitioner was denied the opportunity to reinstitute the recusal motion, which was dismissed as moot once judge Jordan's judgeship had become vacant.

It should be noted that a party moving for disqualification under §455 need not show actual bias because §455(a) "Concerns not only fairness to individual litigants, but equally important, it concerns the public confidence in the judiciary, which maybe irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." Alexander v. Primamerica Holding, 10 F.3d 155, 162 (3d Cir. 1993); Whenever a judges impartiality "might reasonably be questioned" in a judicial proceeding, 28 USC §455(a) requires that the judge disqualify himself. The test for recusal under §455(a) is whether a reasonable person,with knowledge of all the fats, would conclude that the judge's impartiality

might reasonably be questioned.Id.164; "Under §455(a), if a reasonable
man, were he to know all the circumstances, he would harbor doubts
about the judge's impartiality under the applicable standard,
then the judge must recuse." Krell V. Prudential, Ins.Co. of Am.
(In re Prudential Ins.Co.Am. Sales Practice Litig.Agent Actions),
148 F.3d 283, 293 (3rd Cir. 1998); Massachusetts School of Law
at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 ("The
standard for recusal is whether an objective observer reasonably
might question the judge's impartiality.")Id.

Petitioner asserts that prejudice can be presumed in several
instances in the present case. **First**, petitioner was not informed
by the Clerk's Office of the fact that his case was transferred
to judge Sleet, who just happened to be the United States Attorney
for the District of Delaware while petitioner's case was under
investigation; until after a Ruling had been made on his motion,
which in turn prevented him from reinstituting his motion to disqualify;
**Second**, judge Sleet ruled upon petitioner's motion a day before the actual
notice of it being reassigned to his court,which is very odd since
judge Jordan grappled with this issue within petitioner's §2255
motion for over three years and an additional fifteen months on
the 59(a) and (e) motion pursuant to the Fed.R.of Proc. **Third**,
judge Sleet was the United States Attorney for the District of
Delaware while petitioner's case was under investigation in the
Supervisory capacity.

Section §455(a) provides that a judge shall disqualify himself
in any proceeding in which "his impartiality might be questioned."
The language of §455 sets up an objective standard, rather than

the subjective standard set forth in the prior statute through use of the phrase "in his opinion." According to the **report of the House Judiciary Committee**, the general standard of section 455(a) was designed to promote the public's confidence in the partiality and integrity of the judicial process by saying, in effect, that if any reasonable factual basis for doubting the judge's impartiality exist, the judge "Shall" disqualify himself and let another judge preside. **1974 U.S. Code Cong. & Admin.News, pp 6351, 6354-55.**

Clearly, the goal of the judicial disqualification statute is to foster the appearance of impartiality . C.F.E. **Thode, Reporter's Notes to Code of Judicial Conduct 60-61 (1973).** This overriding concern with appearances, which also pervades the **Code of Judicial Conduct and the ABA of Professional Responsibility**, stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence. The protection of the purity, integrity, and dignity of the judicial process from any hint or appearance of bias is the palladium of the judicial system. Any question of a judge's impartiality threatens the purity of the judicial process and its institution.

Because 28 U.S.C.§455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street. Use of the word "might" in the statute was intended to indicate that disqualification should follow if

the reasonable man, were he to know all the circumstances, would habor doubt about the judge's impartiality. **Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv. L.Rev. 736, 745(1973).**

Petitioner asserts that actual impartiality is irrelevant under 28 U.S.C.§455(a) because the statute speaks only to appearance of impartiality and thus, a "judge's introspective estimate of his own ability to hear case impartially is no longer relevant, and even when question is close, judge must recuse himself." Robert v. Bailar, 625 F.2d 125(6th Cir. 1980); (see also United States v. Nacrelli, 543 F.Supp. 798 (E.D.Pa.1982) "Judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned; objective standard, based on reasonable person, knowing all the relevant facts, would conclude about judge's impartiality, is applied."Id.

Because recusal is mandated whenever "an appearance of impartiality is created," eventhough the judge is not concious of the circumstances creating the appearance of impropriety, the statute has been held to require recusal; holding that"scienter" is not an element of a §455(a) violation and does not eliminate the risk that his impartiality might reasonably be questioned by other persons. Liljeberg v. Health Service Acquisition, 486 U.S.847, 859, 100 L.Ed.2d 855, 108 S.Ct. 2194(1988)"the judge's lack of knowledge of a disqualifying circumstance bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned.' United States v. Gordon, 354 F.Supp. 524, 527 (Del.2005)(quoting Liljeberg v. Health Services Acquisition

Corp., Id.at 859).

In addition to these facts which are sufficient in themselves to establish recusal; petitioner points to **Code of Conduct for United States Judges**, which provide in pertinent part:

**Canon 1   A Judge Should Uphold The Integrity**
**            And Independence of The Judiciary.**

An  independent and honorable judiciary is indispensable to justice in our society, A judge should participate in establishing, maintaining, and enforcing high standards, so that the integrity and independence of the judiciary may be preserved. The provision of the Code should be contrued and applied to further that objective.

**Canon 2   A Judge Should Avoid Impropriety And The**
**            Appearance of Impropriety In All Activities.**

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

**Canon 3   A Judge Should Perform The Duties of The**
**            Office Impartially And Diligently.**

The judicial duties of a judge take precedence over all other activities. In performing the duties prescribed by law, the judge should adhere to the following standard (In pertinent part):

**A. Adjudicative responsibilities**

(1) A judge should be faithful to maintain professional compentence in the law, and should not be swayed by partisan interest, public clamor, or fear of criticism.

**B. Administrative responsibilities**

(3) A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer.

## C. Disqualification.

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartialilty might reasonably be questioned, including but not limited to instances in which:

    (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

    (b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter...

As stated below, "A judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and since impartiality of a federal judge need not be demonstrated beyond a reasonable doubt as long as there is a reasonable factual basis to doubt his impartiality or fairness shown by some kind of probative evidence; a judge shall disqualify himself.Id.

Petitioner asserts that judge Sleet should have voluntarily recused himself; because it is insidious to even assume that one who was involved in the investigation of a case and clearly knew of disputed evidentiary facts; could rule in fairness and impartiality. United States V. Schreiber, 599 F.2d 534, 536 (3d Cir.1976) " a 'reasonable person' knowing all the circumstances, would believe that a judge's impartiality could be questioned." (see also United States v. Nobel, 696 F.2d 231, 235 (3d Cir.1982) "what matters is the objective appearance of bias, not actual bias."Id.

The fact that judge Gregory M. Sleet was the United States District Attorney for the District of Delaware while petitioner's case was under investigation, and is now asked to make a determination as to whether the agents illegal actions were within the norm of legal investigation procedures; is seriously disheartening;

57

and a reasonable man would have factual grounds to doubt the impartiality of judge Sleet.

28 U.S.C.§455(a) allows a judge to disqualilfy himself; if a reasonable man would have factual grounds to doubt the impartialilty of the court; thus, guided by this standard there is a reasonable doubt; not necessarily the mind of the judge, or even the litigant, but in the mind of the reasonable man, the disinterested observer fully informed of the facts and the underlying grounds on which recusal has been sought.

In the instant case there is significant doubt that judge Sleet can rise above the alleged predisposition in order to render a fair decision on the facts of law in this particular case, and it is not unreasonable to conclude that an objective individual would presume that judge Sleet;before his ascendancy to the bench, but during the investigation of petitioner; did align himself with the government.

In sum, petitioner believes that he has shown an objectionable inclination of disposition by judge Sleet, due to his past relationship and professional respect for the United States Attorney's Office; which has become a factor affecting his decision making and presented an appearance of partiality.

The language of §455(a) eliminates the so-called "duty to sit". replacing it with the "might reasonably be questioned." (Emphasis added); which clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify himself in a questionable case; for the reason that any inconvience which does arise is more than outweighed by the need to protect the dignity and integrity of the judicial process." The public's

58

confidence in the judiciary ...may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." In re kensington Int'l Ltd., 353 F.3d211, 220(3d Cir.2003)(emphasis in original). (see also Liljeberg v. Health Services Aquisition Corp.; in which the Supreme Court instructed that:

> "The court should consider the risk of the injustice to the parties in the particular case,the risk that the denial of relief will produce---injustice in other cases, and the risk of undermining the public's confidence in the judicial process, 'while bearing in mind that justice must satisfy the appearance of justice.'"(Internal quotation mark and citationomitted).

Id at 486 U.S. at 847, 864.

The requisite of "due diligence has been met despite the Clerk's office and the government's untimely notice to petitioner that the case had been assigned to judge Gregory M. Sleet; who had somehow ruled on the motion before it was supposedly given to him; and before petitioner could file a "motion to disqualify" judge Sleet from making a decision in said proceedings. Just in case,it should be noted, that when a petitioner fails to move for recusal of a judge during habeas proceedings, a "plain error standard of review applies." United States v. Dalfonso, 707 F.2d 757, 760(3d 1983). The court may overlook the failure to object where"error seriously affects the fairness, integrity or public reputation of judicial proceeding." United States v. Olano, 507 U.S. 725, 732, 123 L.Ed.2d508, 113 S.Ct.1770(1993)(internal quotation marks and citations omitted).

III

CONCLUSION

59

For the foregoing reasons, Petitioner Christopher Clemons respectfully prays this Honorable Court Certify the Appealability of the Court's denial of Petitioners motion brought under 28 U.S.C. §2255.

Date this ___6th___ day of September, 2007

Respectfully Submitted,

Christopher Clemons
Reg.No.[04164-015]
UAP CANAAN:PO BOX 300
WAYMART, PA. 18472

## PROOF OF SERVICE

I certify that on <u>Sept.6,2007</u> (Date) I mailed a copy of this motion and attachments

via first class mail to the following parties at the addresses listed below:

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Judge Gregory M. Sleet
J. Calleb Boggs Building
848 N. King Street
Wilmington, DE 19801

United States Attorney's office
     District of Delaware
Robert J. Prettyman
Chase Manhattan Center
1201 Market Street,Suite 1100
P.O. Box 2046
Wilmington,De 19801

## PROOF OF SERVICE FOR INSTITUTIONALIZED OR

## INCARCERATED LITIGANTS

In addition to the above proof of service all litigants who are currently institutionalized or

incarcerated should indicate the following statement on all documents to be filed with this Court:

I certify that this document was given to prison officials on <u>Sept.6,2007</u> (date) for

forwarding to the Court . . .  I certify under the penalty of perjury that the foregoing is true and

correct. 28 U.S.C. §1746.

_Christopher C. Clemm_
Signature